LLOYD *v.* STATE OF INDIANA.

[No. 25,946. Filed March 9, 1934.]

*W. E. Henderson* and *H. R. Wilson, Jr.,* for appellant.

*James M. Ogden,* Attorney-General, for the State.

TREANOR, J.—This is an appeal from a conviction for second degree murder. Appellant assigns that the court erred in overruling his motion for new trial. The grounds for new trial, urged in the motion, are as follows:

"1. Irregularities in the procedure of the court in this to wit: That the defendant employed W. E. Henderson and H. R. Wilson, Jr., duly admitted attorneys to practice law in this court, to defend him as charged in the indictment; notwithstanding this fact the defendant was forced to trial on a day's notice without notice to his attorneys, and without his attorneys employed by him; notwithstanding their appearance was duly filed with the clerk of this court in conformity with the rules of this court, and he was defended by a pauper attorney, and by reason thereof, he did not have a fair trial.

"2. The court erred in giving instructions not numbered, but for convenience here, they are numbered from five (5) to sixteen (16), and numbers placed on said instructions by counsel of defendant for identification; said instructions imply that defendant shot at and into the body of decedent with malice aforethought.

"3. That the verdict of the jury is contrary to law.

"4. The verdict of the jury is not sustained by sufficient evidence.

"5. The court erred in omitting on his own motion to give any instructions which would cover all questions that were raised by the evidence submitted in said cause.

"6. The court erred in failing and refusing to define the law on accidental shooting.

"7. The court erred in its failure to instruct the jury on its own motion on all legal questions necessary to enable them to reach a correct verdict."

While considering the first of the grounds for new trial the trial court had before it the statement of the Honorable James A. Collins, regular judge of the Marion Criminal Court, and affidavits of the defendant, of W. E. Henderson, defendant's counsel on appeal, and of Paul Rhoadarmer, chief deputy prosecuting attorney. From the court's record of the proceedings in the cause and the statement and affidavits so presented, the trial court could have found the following:

On November 20, 1929, the indictment for first degree

murder was returned and filed; on December 2, 1929, defendant appeared in person and by counsel and upon arraignment pleaded "Not guilty." On March 17, 1930, the defendant, by letter, informed the regular judge of the Marion Criminal Court that he had no money or friends and that he had employed W. E. Henderson and H. R. Wilson, Jr. to defend him, and asked the court to appoint them to defend him. On receipt of appellant's letter the regular judge consulted with Henderson. Both the regular judge and Henderson understood "that said letter and the so-called employment of the said William E. Henderson and Henry R. Wilson, Jr., as attorneys for the defendant Lloyd was contingent upon the court appointing said attorneys to defend the said Lloyd and promising to pay said attorneys from the funds of the county treasury"; and that Henderson was informed that "it would be impossible to thus appoint said attorneys to defend said Lloyd and to pay them county moneys on account of the fact that pursuant to law of this state the said Charles Kaelin was then and there employed by Marion County as its pauper attorney to defend all persons without money or friends to engage counsel in their behalf and who were charged with crime in the Marion Criminal Court." (Affidavit of W. E. Henderson.) On March 22, Henderson and Wilson asked the regular judge that they be allowed attorneys fees for the defense of appellant; the court said that if appellant "were to go on trial for accidental murder he would not allow attorneys fees; but if he went on trial charged with murder he would see what could be done." The regular judge asked the prosecuting attorney to report to him whether appellant would be tried for first degree murder. The cause was set for trial for April 3, 1930, and on that date, by agreement with Charles Kaelin, the attorney who defended appellant in the trial below, continued to April 14, during which time

Kaelin's name appeared upon the court calendar in connection with the case. The affidavit of Mr. Henderson contains the following:

"Affiant says that he has never informed Mr. Stark nor the court that they would not defend the prisoner; or that they would withdraw their appearance, and affiant relied upon the presentations made to him by the court, and the representations made to him by Mr. Stark that he would recommend him to defend defendant, that he would be allowed a fee for defending defendant herein; affiant says that their appearance in said cause of. action was. not depending upon whether or not the court would allow a fee; that in the event the court would not allow the fee, the defendant informed him to see his grandfather, and see whether or not he would advance him any money for his defense."

From the foregoing, the trial judge, in passing upon appellant's first ground of motion for new trial must have concluded that the failure of attorneys Henderson and Wilson to defend appellant in the trial below was due to the fact that the regular judge of the Marion Criminal Court appointed another attorney, Kaelin, to defend appellant; and that if attorneys Henderson and Wilson were willing to represent appellant without appointment by the court, their failure to receive notice of the trial and to appear therein was not due to any "irregularity in the proceedings of the court."

This court has recognized that it is "the power, as well as duty of the court to assign to poor persons, charged with serious crimes, counsel for their defense, upon a proper showing." *Hendryx* v. *State* (1892), 130 Ind. 265, 29 N. E. 1131. Whether an accused shall be permitted to defend as a poor person, and if permitted to do so, the number of counsel assigned such accused, are questions for the determination of the trial court in the exercise of a sound discretion which will not be interfered with unless it clearly appears that there has been an abuse of discretion to the prejudice of

the accused. *Keyes* v. *State* (1890), 122 Ind. 527, 23 N. E. 1097. Likewise, it lies within the sound discretion of the court to decide who shall be assigned as counsel to defend a poor person. *Burton* v. *State* (1881), 75 Ind. 477.[1] It does not appear in the instant case that the court's failure to appoint attorneys Henderson and Wilson to defendant appellant constituted an abuse of discretion.

*Note 1.* "The appellant, at the proper time, applied to the court to assign him counsel to aid in the defense of the prosecution, on account of his inability to employ counsel. He showed to the court that he was unable to employ counsel, and that he had consulted with Messrs. Ballard and Clodfelter, attorneys of that court, and had communicated to them the facts and circumstances of the case, and that he had no means to employ counsel, and that they had consented to act as his counsel, if the court should appoint them. He asked that they be appointed.* It appeared, however, that the board of commissioners of the county had employed another firm of attorneys, practicing at the bar of that court—Messrs. Hurley & Crane—to attend to all county business, including the defense of the poor prosecuted in that court, when appointed by the court, at a fixed compensation per year.

"The appellant objected to the appointment of Messrs. Hurley & Crane, saying that he did not think they would do him justice, and desired the appointment of Messrs. Ballard and Clodfelter. But the court, in the language of the bill of exceptions, 'having knowledge of said contract, in the exercise of its sound discretion, the said Hurley & Crane being attorneys in good standing and of experience at this bar, and the defendant giving no sufficient reason why they should not be appointed, appoints said Hurley & Crane to defend said Burton,' etc. Accordingly, Messrs. Hurley & Crane appeared for the defendant, and acted as his counsel until the return of the verdict, when Messrs. Ballard & Clodfelter appeared and filed the motions for a new trial and in arrest.

"It is claimed that the court erred in not appointing Messrs. Ballard & Clodfelter to conduct the defendant's defense; but it seems to us to have been a matter resting in the discretion of the court, and we can not say that there was any abuse of that discretion. There is no rule of law that we are aware of, which entitles a person prosecuted for crime, and unable to employ counsel for his defense, to have such counsel assigned him as he may choose, however desirable it may be that his wishes in that respect should be consulted and gratified.

"The court may in its discretion decline to assign him the counsel he may desire, and assign him other counsel; and its action in this respect can not be error, unless there is, in the particular circumstances, an abuse of discretion.

"It may be that the board of county commissioners have no legal power or authority to employ counsel to defend persons charged with crime and having no means to employ counsel; but, if that is the case, it is no reason why the court may not appoint a person thus employed." *Burton* v. *State, supra.*

In support of his second ground of motion for new trial appellant discusses, in his brief under Points and Authorities, the giving of instructions numbered 9, 11, ▆ and 16. An instruction worded exactly as number 9 was approved by this court in the case of *Harris* v. *State* (1900), 155 Ind. 265, 271, 272, 58 N. E. 75. Instructions numbered 11 and 16 are as follows:

"No. 11. Malice may be proved by direct evidence such as prior threat, assaults or seeking an opportunity to perpetrate the act. This is called express malice.

"Malice may also be implied from the act of killing, if the killing is done purposely and without legal excuse or reasonable provocation, if the act is perpetrated with a deadly weapon so used as likely to produce death; the purpose to kill may be inferred from the act of killing."

"No. 16. You are instructed that the defendant had no legal right at the time and place in question to shoot or kill John Wilson unless then and there at the time of the shooting of Albert Clinger, the said Wilson by his then acts or conduct was putting the defendant in apparent danger to him of his life or of great bodily harm; the defendant had no right in law to take the law in his own hands or to avenge his private wrongs against John Wilson, no matter how great such wrongs might have been, unless then and there at the time the defendant was defending himself from then apparent danger to him of death or great bodily harm at the hands of said John Wilson. The Courts are erected to avenge all wrongs between citizens, and a citizen is only permitted to kill with legal justification when he is so defending himself."

Instruction number 11 was not erroneous. *McDermott* v. *State* (1883), 89 Ind. 187, 193;[2] *Williams* v.

Note 2. "The fourteenth instruction given by the court is as follows: 'Where a homicide is perpetrated by an intentional use of a deadly weapon, in such manner as is likely to and actually does produce death, the law presumes such homicide was committed purposely and maliciously, unless it was done in self-defense or in a sudden heat, caused by such provocation as by law reduces the killing to the grade of manslaughter.'" It was held that the appellant could not complain of the instruction. *McDermott* v. *State, supra.*

*State* (1925), 196 Ind. 84, 90, 147 N. E. 153. Appellant's objections to instruction number 16 are that it "erroneously instructs the jury that the courts are erected to avenge all wrongs between citizens"[3] and that it "assumes that the defendant is guilty of murder." We do not agree that courts are erected to avenge wrongs of citizens but the statement could not have been prejudicial and the instruction is not erroneous for the other reason urged. The instruction assumes the fact that appellant shot the deceased, an assumption warranted by the evidence of both the State and appellant, only for the purpose of informing the jury as to the law of self-defense, and it does not assume that appellant was guilty of murder.

Appellant contends that the court failed to define "accidental shooting" and contends that such failure constituted error. The trial court gave the following instruction, number 17:

"It is no excuse under the law that defendant may have shot the deceased, believing that the latter was John Wilson, provided defendant then and there intended to kill John Wilson in the manner in which it is charged in the indictment relating to deceased Albert Klinger. Of course if you find that defendant at the time and place in question did not intend to kill or injure anyone and that Albert Klinger lost his life by a pure accident, you should acquit the defendant."

Section 2301, Burns Ann. Ind. St. 1926, §9-1805, Burns 1933, §2285, Baldwin's 1934, Acts 1905, ch. 169, p. 584, §260, provides that "in charging the jury, the court must state to them all matters of law which are necessary for their information in giving their verdict." Whether the death of the deceased was caused by appellants "accidental shooting" was a question of fact

<hr>

*Note 3.* In the case of *Rains* v. *State* (1899), 152 Ind. 69, 52 N. E. 450, it was held that there was no merit in an appellant's contention that an instruction was prejudicial which told the jury that "the law does not permit a person to revenge himself in any case."

for the jury's determination under instructions which informed them that the burden was on the State "to prove to the satisfaction of each juror beyond a reasonable doubt every material allegation of the indictment as to some one of the degrees of felonious homicide covered by the indictment," and that "the law presumes the defendant . . . to be innocent of the commission of any crime; and, he is presumed to be innocent of the offense charged in said indictment or any degree therein embraced and this presumption continues in his favor throughout the trial of this cause, step by step, until his guilt has been established by evidence, to the satisfaction of each of you beyond a reasonable doubt." No. objection is made to instruction 17, *supra;* and no other instructions on the subject of accidental shooting were requested, or, under §2301, *supra,* were required.

It is also contended that the court erred in failing to define voluntary and involuntary manslaughter. The jury were told that the indictment, which was for first degree murder, also included second degree murder and manslaughter; that "whoever, purposely and with premeditated malice, kills any human being, is guilty of murder in the first degree," that "whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree" and that "whoever, unlawfully kills any human being without malice, expressed or implied, is guilty of manslaughter." The instruction given stated so much of the law in respect to the offense of manslaughter "as was necessary for their information in giving their verdict" and in view of the fact that the jury, by their verdict, found that both purpose and malice were present in the commission of the offense, there was no prejudicial error in failing to distinguish between voluntary and involun-

tary manslaughter. The instruction given was correct
and more complete instructions were not requested.

Appellant contends that the verdict was not sustained
by sufficient evidence and is contrary to law, and in
support thereof urges that "the uncontradicted
positive evidence shows that there was no malice
against deceased Klinger, that he was shot by
appellant either by accident or mistake."

The evidence of both the State and appellant shows
that appellant had an altercation with one John Wilson
in which appellant was cut by Wilson; that thereafter
appellant walked 14 blocks to obtain a shot gun and
returned to the house at which the altercation had
taken place, intending to shoot Wilson. When he
arrived, no one was present. He obtained two shells
from a drawer in the house and loaded the gun. Klinger
drove up in Wilson's automobile. The only conflict in
the evidence arises at this point, the appellant claiming
that by accident the shots were fired, striking Klinger.
Appellant testified that it was purely accidental while
there was other substantial testimony that he deliber-
ately shot at Klinger, thinking that Klinger was Wil-
son. Police officers testified that after his arrest ap-
pellant told them that he shot at a man whom he
thought was Wilson but later learned that he had shot
Klinger. The cause was tried and the jury instructed
on the theory that if the jury should find that appellant
intended to kill Wilson, the offense committed would not
be reduced below the grade of murder solely by reason
of the fact that he killed Klinger, mistaking him for
Wilson. In this there was no error. In the case of
*Brown* v. *State* (1897), 147 Ind. 28, 33, 46 N. E. 34,
this court said:

> "If the shooting of Rippey was in the mistaken
> belief that he was another, and if the act would
> have been murder had the person shot been as
> believed, the offense would not, by reason of such

mistake, be reduced below the grade of murder. *Walker* v. *State*, 8 Ind. 290."[4]

The verdict is sustained by sufficient evidence and is not contrary to law. The trial court did not err in overruling appellant's motion for new trial.

Judgment affirmed.

*Note 4.* According to the cases collected in the note in 33 L. R. A. (N. S.) at p. 1071, this was the rule at common law and is followed in Alabama, Iowa, Kentucky, West Virginia, California, Pennsylvania and Washington. It is there pointed out that in Texas and Tennessee the rule is qualified in that there cannot be a conviction in such a case for first degree murder.