### JERRY KERNS v. STATE OF INDIANA.

[No. 475S87. Filed June 30, 1976.]

*Michael J. McDaniel,* of New Albany, for appellant.

*Theodore L. Sendak,* Attorney General, *James N. Shumacker,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted in a trial by jury of murder in the first degree[1] in the slaying of his wife. His appeal presents two issues:

    (1) Insufficiency of the evidence as to the requisites of purpose and premeditated malice.

    (2) Incompetency of trial counsel.

---

1. 35-13-4-1 [10-3401]. Murder—First Degree.—(a) Whoever kills a human being either purposely and with premeditated malice or while perpetrating or attempting to perpetrate rape, arson, robbery, or burglary is guilty of murder in the first degree and, on conviction, shall be imprisoned in the state prison during life, * * * ." [Acts 1941, ch. 148, § 1, p. 447; 1971, P.L. 454, § 1, p. 2093; 1973, P.L. 328, § 1, p. 1806.]

## ISSUE I

The evidence most favorable to the State, together with the inferences reasonably adduced therefrom, disclosed that the defendant and his wife had been having severe marital problems. Eight months prior to the slaying, the defendant stated that he would kill his wife if she ever left him, and approximately two weeks prior to the tragic event, he was seen by a neighbor striking his wife.

The defendant and his wife were living apart. The record is not clear as to whether or not she had commenced divorce proceedings, but it indicates that he at least believed that she had done so. Four days prior to the killing and while the decedent was momentarily absent, the defendant was observed sneaking around the mobile home where she resided with their children. On the same day, he visited the decedent at her mother's home and threatened to "get her." On the following day, he returned and made intimidating statements to her, saying that she would be "lying in the cemetery" and that when she left she had better be "looking over both shoulders."

On the day of the slaying, a neighbor, Sue Harris, went to the decedent's home to visit. To her surprise, the defendant answered the door with a shotgun in hand. The deceased was standing behind him and said, "Please don't hurt Sue. She's not done anything." The defendant motioned for Mrs. Harris to come in, but she turned to walk home; and as she did so, the defendant told her to call the law, which she did. A few minutes later, the children of the defendant and the decedent arrived at her door carrying a paper sack containing their night clothes, some toys and the defendant's wallet.

A deputy sheriff responded to Mrs. Harris' call approximately twenty-five minutes following her departure from the Kern home. As he arrived in his vehicle, he heard a gunshot from within the mobile home and another as he approached it on foot. He returned to his vehicle and radioed for assistance. Meanwhile, the defendant fled from the home, ap-

parently through a rear window. He surrendered himself to the police on the following day.

When the defendant surrendered to the police, he was interrogated as to why he had killed his wife, and he responded that he had been drinking and that it seemed like the thing to do. In response to the same question on the following day, he stated that she had misbehaved all that she was going to, that he was tired of it and that that was the reason he killed her.

Both malice and purpose may be inferred from the deliberate use of a deadly weapon in a manner likely to produce death. *Chatman* v. *State*, (1975) 263 Ind. 531, 334 N.E.2d 673; *Dinning* v. *State*, (1971) 256 Ind. 399, 269 N.E.2d 371. Moreover, the evidence of previous threats, the manner of the killing, and the statements made to the officers after arrest all indicate that the slaying was premeditated, purposeful and malicious. *Aubrey* v. *State*, (1974) 261 Ind. 531, 307 N.E.2d 67; *Dinning, supra.* While there was some evidence that defendant had been drinking prior to slaying his wife, the jury was entitled to believe that any intoxication resulting from this drinking was not of such a degree as to negate the ability to form a specific intent to kill. *Cody* v. *State*, (1972) 259 Ind. 570, 290 N.E.2d 38; *Hunter* v. *State*, (1965) 246 Ind. 494, 207 N.E.2d 207; *Yarber* v. *State*, (1962) 242 Ind. 616, 179 N.E.2d 882.

The defendant argues that the above related evidence, considered together with other evidence not here related, indicated that the defendant was acting in the heat of passion or during an insane rage at the time of the homicide. We acknowledge that a verdict of voluntary manslaughter might have been reasonably adduced from the evidence. However, the verdict of the jury who heard the evidence and whose responsibility it was to make the determination, concluded that the slaying was done purposely and with premeditated malice. We do not agree that there was no evidence from which reasonable men could have drawn such a conclusion.

## ISSUE II

Under his assignment of incompetency of trial counsel, the defendant charges that his counsel's investigation of the case was inadequate, that he called no witnesses in the defendant's behalf and that he failed to file a plea of insanity, thereby precluding a defense predicated upon the absence of specific intent due to intoxication or rage.

We have frequently stated that an attorney is strongly presumed to be competent. *Beck* v. *State*, (1974) 261 Ind. 616, 308 N.E.2d 697; *Blackburn* v. *State*, (1973) 260 Ind. 5, 291 N.E.2d 686. Absent "a glaring and critical omission or succession of omissions evidencing in their totality a mockery of justice, this Court will not attribute a criminal conviction or affirmation to ineffective representation." *May* v. *State*, (1975) 263 Ind. 690, 338 N.E. 2d 258, 260. Allegations of incompetence, even if unrefuted, are not alone sufficient to rebut the presumption of competence. *Jackson* v. *State*, (1975) 264 Ind. 54, 339 N.E.2d 557.

Here, defendant has not shown what witnesses trial counsel failed to interview, or what exculpatory evidence he failed to discover. In the absence of such proof, the failure to call witnesses in defendant's behalf, or to interview witnesses, would not amount to a mockery of justice. We may not presume incompetence without more evidence than defendant has shown.

Evidence of intoxication may be admitted to negate the presence of specific intent regardless of whether a plea of insanity has been filed. *Emler* v. *State*, (1972) 259 Ind. 241, 286 N.E.2d 408. The same would be equally applicable to evidence of uncontrolled rage. Conceptually, these defenses are different from a defense of insanity. Further, evidence that the defendant had been drinking was before the jury, and the jury was instructed that intoxication could negate intent.

There is nothing in the record before us to warrant a charge of ineffective counsel. The record does not reflect that he

made a thorough investigation, but it does not reflect that he did not nor that there was anything about the case not revealed to him by the defendant. The very best of lawyers are limited to working with their cases as they find them. They cannot alter the facts. They can not make unlawful acts lawful. They can not undue the crime. If the investigation was brief and limited, perhaps it was because it, nevertheless, revealed that there was no need to explore further. If no defense witnesses were called, perhaps it was because there were none to call. If no plea of insanity was entered, perhaps it was because the defendant was sane. Mere allegations of omissions, unsupported by the record, and speculation as to what might or might not have been more beneficial to the defendant do not present issues susceptible to review.

We find no reversible error. The judgment of the trial court is affirmed.

Givan, C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 349 N.E.2d 701.