AARON HOLT, JR. *v.* STATE OF INDIANA.

(No. 1175S317. Filed August 1, 1977.)

*Robert W. Hammerle,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, for appellee.

HUNTER, J.—Aaron Holt, the defendant, was charged by grand jury indictment with first degree murder. A jury returned a verdict of guilty, and the defendant was sentenced to life imprisonment. A timely motion to correct errors was filed and overruled, from which this appeal is taken. The defendant raises the following issues in his appeal.

1.)  Whether the method of selecting and using the regular panel of jurors was not according to law;

2.)  Whether the trial court erroneously instructed the jury on the standard of reasonable doubt;

3.)  Whether the trial court erroneously instructed the jury on the theory of "transferred intent"; and

4.) Whether there was sufficient evidence to support the jury's verdict.

## I.

During the voir dire of jurors, the defendant challenged the entire jury array on the grounds that the regular panel was to be composed of no more than 12 members and that the method used by the trial court in selecting the regular panel was contrary to law. He conditionally accepted the jury, noting that his objection was a continuing one. The defendant also challenged all jurors for cause who had served on a jury within the previous twelve months.

The method used by the trial court in selecting its regular panel was as follows. It ordered the clerk to call 720 persons for the purpose of impanelling a regular panel. Those 720 persons were summoned by subpoena. Each subpoena was accompanied by a questionnaire. Any person who sought to be excused because of economic hardship or other good excuse was not required to serve. Through this process, the 720 prospective members were diminished to 180. The 180 members of the regular panel were then divided into 6 groups of 30 jurors each. One of the six groups was called in everyday, on a rotating basis, in the order in which their names were drawn from the jury box. In this way, each group served approximately one day per week for the three-month term of the regular panel. Any juror who was a member of the regular panel was excused upon request after having served on two juries.

For this trial, two sections of the regular panel were called, since this was a murder trial. The total number of jurors called were 45, none of whom were talesmen, or part of a special venire. The jury, as finally accepted, was composed of nine jurors who had served on a previous jury within the past twelve months as part of the regular panel.

The defendant first contends that it was error for the trial judge to overrule his challenge for cause as to those jurors who had served on jury within the last twelve months.

"Challenges for cause.—The following shall be good causes for challenge to any person called as a juror in any criminal trial:

. . .

Fifteenth. If he is not a member of the regular panel, that he has served on a jury within twelve [12] months immediately preceding the trial."

Ind. Code § 35-1-30-4 (Burns 1975). The defendant did not exhaust his peremptory challenges and has thus failed to show any prejudice, *Kocher* v. *State*, (1920) 189 Ind. 578, 127 N.E. 3. There was, however, no error. A prospective juror may be challenged for previous jury service within one year only if he is *not* a member of the regular panel. These nine jurors were admittedly members of the regular panel. *Brown* v. *State*, (1977) 266 Ind. 82, 360 N.E.2d 830.

The defendant also contends that a regular panel may consist of no more than twelve members, citing *Benadum* v. *State*, (1914) 182 Ind. 510, 107 N.E. 8. In that case, regular panels were limited to twelve by statute. No present statute so limits the regular panel.

"At such drawing the names of competent persons shall be first drawn for each court having criminal jurisdiction *in the number specified* by the court in such order."

Ind. Code § 35-15-22-1 (Burns 1975) (Emphasis added.) The use of a regular panel exceeding twelve members has previously been approved by this Court. *Brown, supra.*

Finally, the defendant contends that the trial court's selection process creates a "professional jury" of only those who are eager, willing and financially able to serve.

Due process requires a fair and impartial jury. The right to an impartial jury precludes systematic and intentional exclusion of any particular class of persons, but does not require that any particular class be represented. *Tewell* v. *State*, (1976) 264 Ind. 88, 339 N.E.2d 792. Although a jury must be selected from a fair cross-section of the community, jurors need not be mathematically propor-

tioned to the character of the community. *Fay* v. *N.Y.*, (1947) 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043. The burden of demonstrating prejudicial discrimination is on the defendant. In addition, trial courts have discretionary authority to excuse prospective jurors. *Brown* v. *State, supra; Tewell* v. *State, supra.* Certainly this discretion must not be exercised illogically or arbitrarily, but a reasonable exercise of discretion by the trial court will not be interfered with on appeal.

Here, the trial court, without exception, excused those prospective jurors who sought to be relieved of service because of hardship. He stated that this included economic hardship, illness in the family or some infirmity which would not permit the individual to serve. The defendant would have us presume that this procedure for excusing jurors excluded a certain class of persons financially unable to serve, and that those who did serve were overly willing. This is not supported by the record. There is no showing of the relative economic status of the various prospective jurors, neither does the record show that the defendant is of the same class as any allegedly excluded group. The trial court's method of excusing jurors was not illogical. He sought to avoid hardship to any prospective juror. The 43 questionnaires placed of record reveal that the trial court did not arbitrarily excuse prospective jurors. Not all requests to be excused were granted. The jurors were engaged in various occupations, such as, for example, telephone operator, mechanical engineer, retired persons and housewives. There was good reason for the trial judge to relieve from jury duty those suffering under a hardship. The class of persons excluded, those suffering under a hardship and seeking excuse, does not, on the other hand, have a characteristic which would tend to prejudice the defendant by its absence. Neither can we say that the trial court's method of selection produced a jury which was overly willing to serve. These jurors did not request to serve on a jury, nor has the defendant shown that any juror had any specific prejudicial reason for accepting the summons to serve.

There was no error in the trial court's overruling of the defendant's challenge to the jury array.

## II.

The defendant objected to the court's instruction on reasonable doubt and tendered his own instruction, which was refused  The portion of the court's instruction which was objected to is as follows:

"A reasonable doubt is not a fanciful doubt. It is a doubt which arises from the evidence, the lack of evidence or a conflict in the evidence.

"It is a doubt which would disturb the conscience of a resolute and decent person who is sincerely devoted to justice for everyone, without regard to his or her status in life or society."

The defendant objects that this instruction differs from the traditional statement of the law on reasonable doubt. *Baker* v. *State,* (1956) 236 Ind. 55, 138 N.E.2d 641. The court's precise instruction has previously been considered by this Court and found not to be reversible error. *Brown* v. *State, supra.*

## III.

The trial court gave its own instruction of the theory of transferred intent. The defendant objected to this instruction on the grounds that it was an incomplete statement of the law. The instruction was given as follows:

"If one shoots at A, but misses him and kills B, he must be judged as though he killed A.

"Therefore, his guilt or his innocence is to be determined as though he had, in fact, killed A."

It is settled that an offense will not be reduced in degree solely by reason of the fact that the intended victim was not the actual victim. *Lloyd* v. *State,* (1933) 206 Ind. 359, 189 N.E. 406.

"If the circumstances would have made it first degree murder had the intended victim actually been slain, it would still be murder in the first degree for the reason that the law transfers the previous felonious intent from the intended victim to the one actually killed."

*Noelke* v. *State,* (1938) 214 Ind. 427 at 432, the material elements of premeditated homicide on the theory of transferred intent are:

"a.) That there was premeditated malice and purpose to kill the intended victim.

"b.) That, in carrying out, or attempting to carry out, the offense against the intended victim the actual victim was slain by the defendant. . . ."

*Noelke, supra.* 214 Ind. 431-2.

Although the court's instruction on transferred intent does not include premeditated malice, the court's preliminary instructions set out the elements of first degree murder and its included offenses. Instructions are to be considered as a whole. *Loftis* v. *State,* (1971) 256 Ind. 417, 269 N.E.2d 746.

The court's charge sufficiently instructed the jury that the defendant must be attempting to carry out the offense against the intended victim. The problem with the instruction is that instead of advising the jury that they were to transfer the defendant's intent from the intended victim to the actual victim, the court's charge instructs the jury to transfer the death of the actual victim to the intended victim. This was erroneous. However, we do not feel that the error was harmful

The effect of the court's instruction is the same as that of a correct instruction. In following this instruction, no conclusion could be reached which would differ from the conclusion which would be reached in following a correct instruction. Whether the jury adopts the fiction that the defendant intends to kill an unintended victim, or adopts the fiction that the intended victim actually died, the conclusion is the same. For this reason, we find no reversible error in this instruction.

## IV.

The defendant's last allegation of error is that there was a total lack of evidence to show that he had, with premedi-

tated malice, the purpose to kill the intended victim, and that there was no evidence to sustain the transference of intent to the actual victim.

When reviewing the sufficiency of the evidence, only that evidence most favorable to the state and the reasonable inferences to be drawn therefrom will be considered on appeal. *Daniels* v. *State,* (1976) 264 Ind. 490, 346 N.E.2d 566. This Court does not weigh the evidence nor determine the credibility of the witnesses. Our review is limited to determining whether there was sufficient evidence of probative value from which a jury could have determined guilt beyond a reasonable doubt. *Gaddis* v. *State,* (1969) 253 Ind. 73, 251 N E.2d 658.

The relevant facts are as follows: Richard Taylor, Marcia Level and Patricia Holt were riding in a car on the evening of the homicide. They had stopped to talk to someone on the street when the defendant, Aaron Holt, yelled to them from his porch. Holt approached the car and asked Taylor for twenty dollars that he owed him. Taylor refused to pay, at which point the defendant produced a gun and threatened to kill Taylor. The defendant then beat Taylor over the head with the pistol as Taylor sat in the car. In the struggle, the gun discharged killing Marcia Level, who was sitting in the middle of the front seat. The defendant's gun was a single action .22 caliber revolver, the hammer of which must be manually cocked before it will fire.

The subsection of the statute defining first degree murder reads:

"(a)   Whoever kills a human being . . . purposely and with premeditated malice . . . is guilty of murder in the first degree. . . ."

Ind. Code § 35-13-4-1 (Burns 1975).

A conviction of first degree murder based upon the theory of transferred intent, must be supported by evidence establishing the elements of first degree murder and also that, the defendant, in carrying out the offense against the intended victim, the actual victim was

slain. *Henderson* v. *State,* (1976) 264 Ind. 334, 343 N.E.2d 776; *Noelke, supra*

Malice may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury and, also, the purpose to kill may be inferred from the act of killing. *Clark* v. *State,* (1976) 265 Ind. 161, 352 N.E.2d 762; *Kerns* v. *State,* (1976) 265 Ind. 39, 349 N.E.2d 701.

Evidence must also support a finding of premeditation. Premeditation is the holding in the mind and reflection upon a thought. *Maxey* v. *State,* (1976) 265 Ind. 244, 353 N.E.2d 457 Although the malice must be deliberated upon, premeditation may occur almost instantaneously. *Everett* v. *State,* (1934) 208 Ind. 145, 195 N.E. 77.

The defendant threatened Taylor and then beat him over the head with a cocked and loaded weapon while others sat in the car with him. A person is presumed to intend the natural and probable consequences of his actions. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686. This evidence was sufficient to support the jury's verdict.

For all the foregoing reasons, we find no trial error, and the judgment should be affirmed

Judgment affirmed.

Givan, C.J., Prentice and Pivarnik, JJ., concur.

DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DeBruler, J.—All judges and lawyers are committed by the Constitution and statutes to the principle that the accused is entitled to a trial according to the law of the land. It is beyond question that where the jury instructions fail to inform the jury of the elements of a crime charged, and the jury returns a verdict of guilty, the resulting conviction and punishment are invalid as a denial of due process of law. One of the essential elements of the offense of which appellant stands convicted is that "there was premeditated malice and

purpose to kill the intended victim." *Noelke* v. *State,* (1938) 214 Ind. 427, 431, 15 N.E.2d 950, 952.

None of the instructions given in this case, alone or when considered with others, informed the jury of the existence of this element and of its duty to find this element proved beyond a reasonable doubt before it could find appellant guilty. For this reason appellant should be granted a new trial.

The majority concludes that the jury was adequately informed of this element by preliminary instruction 2-P and final instruction 4-F. Preliminary instruction 2-P included a copy of the indictment for first degree murder together with statutory definitions of first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter. That part of instruction 2-P defining first degree murder stated:

> "Whoever kills a human being either purposely and with premeditated malice or while perpetrating or attempting to perpetrate rape, arson, robbery, or burglary is guilty of murder in the first degree and, on conviction, shall be imprisoned in the state prison during life.
> The elements of this crime are that the accused must:
> 1. have killed a human being,
> 2. purposely, and
> 3. with premeditated malice."

Final instruction 4-F stated:

> "If one shoots at A but misses him and kills B he must be judged as though he killed A.
> Therefore, his guilt or his innocence is to be determined as though he had, in fact, killed A."

First, and most importantly, these instructions contain no simple, direct statement of the questioned element. The instruction giving the statutory definition contains no such statement. It refers to malice and purpose to kill the actual victim. The transferred intent instruction contains no such statement. It tells the jury to judge the accused as though he had in fact killed A.

Second, the majority suggests that the jury would have erected this element through use of its reasoning faculties upon consideration of the two instructions together. In order for the definition of an element of the offense to arise in this fashion, and to satisfy due process, the necessary reasoning process would have to be required by the language of the instructions and the steps in that process clearly delineated. Such is not the case with these two instructions. There is no direct reference in one to the other. There is no statement that the one creates an exception to the other. The two do not contain similar terms which would indicate their symbolic relationship. The statutory instruction is part of a larger preliminary instruction numbered 2-P which contained the indictment and the definitions of second degree murder, voluntary manslaughter and involuntary manslaughter. It was not reread as part of the final instructions. The transferred intent instruction was read as a final instruction only, and it also went to the jury in written form among other final instructions. The order in which they were presented to the jury would not alert the jury to their special relationship. In short, the jury may or may not have discovered that it was presented with a puzzle by these two instructions, and may or may not have discovered the rules by which that puzzle was to be solved, and may or may not have arrived at the necessary conclusion that it was required to be satisfied beyond a reasonable doubt that "there was premeditated malice and purpose to kill the intended victim." *Noelke, supra.*

NOTE.—Reported at 365 N.E.2d 1209.