Earl Lee RUSSELBURG, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–8701–CR–13.

Supreme Court of Indiana.

Oct. 24, 1988.

Terry A. White, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Count I, Criminal Reckless-

ness; Counts II, III, and IV, Attempted Murder; and Count V, Robbery. He was sentenced as follows: Count I, six (6) years consecutive to other counts; Count II, forty (40) years consecutive to other counts; Count III, fifty (50) years concurrent to Count V and consecutive to other counts; Count IV, fifty (50) years consecutive to other counts; and Count V, forty (40) years concurrent to Count III and consecutive to other counts, for a total executed sentence of one hundred forty-six (146) years.

The facts are: Appellant, age thirty-six, spent the early portion of December 28, 1985 at the Henderson County, Kentucky homes of his brothers, playing cards and drinking various alcoholic beverages, smoking marijuana cigarettes, and ingesting muscle relaxants and pain medication "for a work-related injury." After borrowing a .22 caliber rifle and ammunition from one of his brothers, appellant went to Joe's Bar, where he drank ten or twelve "straight shots."

Despondent over the running out of his unemployment compensation benefits and over the loss of his job, his girl friend, his home, and custody of his child to his ex-wife, appellant drove his pickup truck to Atkinson Park in Henderson, Kentucky, where he unsuccessfully attempted to commit suicide. He then drove across the Henderson bridge into Evansville, Indiana while repeatedly bumping his car into the rear of the car ahead of him driven by Christopher Fortune. When Fortune stopped his car to protest, appellant's response was to fire a shot at him with the .22 rifle.

Appellant then proceeded to Garvin Street in Evansville where he twice bumped his truck into the rear of a moving car driven by Jeff Vincent, then drove around its passenger side, sideswiping it in the process. Vincent followed appellant's vehicle for approximately four blocks to get his license plate number. When appellant stopped his truck, Vincent recorded the number just before appellant fired three shots into his windshield. Vincent escaped injury and called police.

Appellant meanwhile drove to the Quick Stop Liquor Store in Evansville. He entered the store and told the clerk, Susan Fisher, "This is a robbery," and pointed the rifle at her. When she exclaimed "My God, you're serious," appellant shot her in the chest and told her, "Now get up and get me the money." She took all the currency —less than $100—from the cash register and handed it to him. When he demanded more, she gave him the rolled coins; he "flipped them back across the counter" and told her he wanted bills. When told to look for himself that there were no more bills, he threw the telephone from the counter onto the floor and left the store.

By that time, a description of appellant's truck had been broadcast over police frequencies. His truck was observed by Evansville Police Sergeant John Haller, who was following it to confirm the license plate number when appellant braked abruptly. Haller stopped and exited his vehicle, standing behind his open door for cover while reaching for the shotgun beneath his seat. Appellant leaned out of his open truck door and fired one shot into Haller's door. Haller fired into appellant's truck. As he was chambering a second round, appellant's second shot struck him in the left cheek. Haller's weapon discharged into the air as he fell. Haller then climbed into the front seat of his vehicle and radioed for assistance.

After shooting out Sergeant Haller's windshield thereby scattering glass over the wounded officer, appellant resumed driving his truck. Subsequently, he was spotted by Vanderburgh County Deputy Sheriff Thomas Wedding. A chase ensued, joined in by Officer Bruce Pullam. Eventually his truck was boxed-in by the officers. Appellant was ordered to come out with his hands up, but came up with his rifle instead. Upon seeing it pointed at them from less than ten feet away, both officers fired their weapons. One round struck appellant in the upper thigh and another in the lower abdomen. He was then handcuffed and transported to the emergency room at St. Mary's Hospital.

After treatment, he was advised of his *Miranda* rights by Evansville Police Sergeant Larry Spradlin. Appellant stated he had an attorney but did not require his presence at that time. Appellant then related to Sergeant Spradlin that in his despondency over the loss of his girl friend, he had tried but failed to shoot himself to death. He went on to explain he then had decided to end his life by coming to Evansville to "look for the Police and piss them off enough that finally they'll shoot me." He was disappointed they had failed to kill him.

Appellant contends the trial court erred in admitting his inculpatory remarks to Sergeant Spradlin. He maintains that because of his intoxication and because he was not completely advised of his *Miranda* rights, his admissions were not voluntary and thus Sergeant Spradlin's testimony relating them should have been suppressed.

■ The record reveals, however, that Sergeant Spradlin read appellant his rights from a police department-issue *Miranda* card, which recited the complete rights. Appellant was not inadequately advised of his rights prior to his inculpatory admissions.

■ Appellant also maintains his level of intoxication was so high that it in effect vitiated his waiver of his *Miranda* rights. As we have previously stated:

"When a defendant challenges the voluntariness of his confession based upon his allegation that he was in an intoxicated state when he made his statement, he has the burden to introduce evidence to establish that the amount and nature of the intoxicants would produce an involuntary statement." *Wiseheart v. State* (1986), Ind., 491 N.E.2d 985, 992.

In support of his claim, appellant recites the variety of intoxicants he ingested prior to his shooting spree. He also points out his blood alcohol content of .2166 percent, measured from a blood specimen drawn just before his admissions to Sergeant Spradlin, as well as his gunshot wounds. Dr. Eduardo de la Flor, a psychiatrist and appellant's *pro bono* expert witness, testified appellant was "at least intoxicated" and perhaps was undergoing a stress-induced "psychogenic fugue," *i.e.*, a functional mental state involving dissociation of the personality. Appellant concludes the totality of circumstances indicates that his statements to Sergeant Spradlin could not have been the product of a rational intellect and free will, citing *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188.

However, testimony at trial indicated appellant was able to comprehend and respond to questions from both the police and medical personnel. Sergeant Spradlin testified appellant was alert, his speech was not slurred, and he was able to give officers the addresses and telephone numbers of several relatives he wished to contact as well as his own name, date of birth, and social security number. When reviewing a trial court's ruling on the voluntariness of a confession, we consider "only the evidence which supports that ruling, when the evidence is in conflict, as well as any unrefuted evidence in [the] defendant's favor." *Jackson v. State* (1980), 274 Ind. 297, 298–99, 411 N.E.2d 609, 611.

In the case at bar, while appellant's claims of having ingested copious amounts of intoxicants are unrefuted, the alleged degree of resulting impairment is not supported by appellant's behavior at the time of his arrest. Our previous decisions are thus dispositive:

"Even where evidence is uncontradicted that a defendant was under the influence of drugs or alcohol at the time of police interrogation, other evidence may be sufficient to prove that a knowing and intelligent waiver of rights occurred or that a resulting statement was made voluntarily." *Riley v. State* (1987), Ind., 506 N.E.2d 476, 480.

Here, the trial court's ruling is supported by the evidence. Appellant's admissions to Sergeant Spradlin were properly admitted.

■ Appellant contends the trial court erred in refusing his tendered jury instructions regarding the defense of voluntary intoxication. He acknowledges the rule is that "[a]s a general proposition, a defendant should not be relieved of responsibility

when he was able to devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill." *Terry v. State* (1984), Ind., 465 N.E.2d 1085, 1088.

Appellant maintains his case is an exception to the rule in that the testimony of his psychiatrist shows he was unable to form the intent required for a criminal conviction. Due to his "psychogenic fugue," he argues, he "could have performed intellectual functions while not being able to formulate the intent to commit the crimes." He argues "such an alcoholic disorder effectively creates a new identity in a person, while the individual is still able to preserve other intellectual faculties and even perform complicated acts and appear normal to the casual observer."

Dr. de la Flor's testimony—that stress and substance abuse resulted in the dissociation, *i.e.*, splitting, of appellant's personality—tends to support a defense of insanity induced by voluntary intoxication. This evidence supports the granting of an instruction on an insanity defense. Such an instruction was given by the trial court as Instruction No. 26. In addition the court repeatedly instructed the jury that they must find that appellant acted knowingly and in Instruction Nos. 18 and 25 defined "knowingly." There was no error in refusing appellant's instruction on voluntary intoxication as the issue of appellant's ability to form intent was covered by given instructions. *Jackson v. State* (1986), Ind., 490 N.E.2d 1115.

Appellant contends the trial court erred when it refused his Tendered Instruction No. 3 which stated that the level of culpability required for conviction, "knowingly," must be assessed using a subjective rather than objective standard. The Court's Instruction No. 25 correctly instructed the jury on this subject.

▪ A tendered instruction is properly refused if its substance is covered by other instructions given to the jury. *Id.* The court's instruction served to focus the jury's inquiry upon appellant's own awareness of his conduct. Thus they clearly were instructed to find appellant's state of mind from his subjective point of view. It was not error to refuse appellant's Tendered Instruction No. 3.

▪ Appellant contends the trial court erred in denying his motion for mistrial made after overruling his objection to certain jurors being called out of order and to others being excused without reason or without opportunity to challenge their excuses. Appellant cites *Holt v. State* (1977), 266 Ind. 586, 365 N.E.2d 1209, for the proposition that a trial court may not exercise its discretion in excusing jurors in an illogical or arbitrary manner. He also cites pertinent portions of the statute, Ind.Code §§ 33–4–5–9 and 33–4–5.5–16, to support his assertion the trial court failed to comply substantially with jury selection procedures mandated by the legislature.

It appears from the record the trial court simply excused potential jurors who were absent for any reason offered or for none at all. While this practice does not comply substantially with the statute, neither does it necessarily merit reversal. As the State points out, Ind.Code § 33–4–5–9(e) goes on to say that no judgment shall be reversed due to noncompliance "unless it appears that the noncompliance was either in bad faith or ... was probably harmful to the substantial rights of the objecting party."

Appellant thus must show bad faith or prejudice to prevail; he demonstrates neither. In the absence of purposeful, nonrandom exclusion of veniremen, and with no showing of harm to appellant, the trial court's technical noncompliance with the statutory requirements for jury selection does not amount to reversible error. *Johnson v. State* (1983), Ind., 442 N.E.2d 1065; *Holt, supra*.

▪ Appellant contends the trial court erred in denying his motions for mistrial made when oblique references to his criminal history were brought out during the testimony of two medical experts. During cross-examination by the State, Dr. de la Flor was asked, "Is it significant to you if he had had other incidents in his past where he could have raised the defense of insanity and had not done so?" Appel-

Cite as 529 N.E.2d 1193 (Ind. 1988)

lant's objection to further questioning regarding past convictions was sustained, the trial court finding a 1983 conviction for check forgery to be irrelevant to the issue of appellant's insanity. His motion for mistrial was overruled.

During the State's rebuttal of appellant's insanity defense, the testimony of Dr. John True was offered to show appellant had been given the opportunity to be treated for alcoholism while on probation in 1982 and 1983. Dr. True stated that appellant "was very strong in saying that he believed that he did not have a problem, without that belief that you do have a problem and that you do need help there is little liklihood [sic] that there will be improvement or change." When asked whether appellant had sought treatment of his own volition, Dr. True replied, "He came voluntarily but at the insistence of his probation officer...."

Prior to this testimony, the trial court heard argument on appellant's motion in limine to exclude any reference to his prior convictions. The court ruled to exclude any mention of specific incidents or convictions, but that Dr. True could indicate how appellant had come to be his patient. Appellant voiced a continuing objection and moved for a mistrial. Appellant now argues the references by the doctors were irrelevant to his insanity defense and were introduced merely for their prejudicial effect upon the jury.

The import of the references—that appellant had suffered behavioral problems associated with alcohol in the past and had attempted, or not, to deal with them—is clearly not so irrelevant to the issue of his insanity defense that we could find the trial court in error for admitting the challenged testimony. Evidence of past criminal acts, while irrelevant and inadmissible towards proving guilt, may well be relevant and admissible to show mental condition, *e.g.*, when used, as here, by an expert witness in formulating his opinion. *Coble v. State* (1985), Ind., 476 N.E.2d 102. The trial court did not err in denying appellant's motions for mistrial.

■ Appellant contends his one hundred forty-six (146) year executed sentence is manifestly unreasonable and constitutes an abuse of the trial court's discretion. He claims it improperly considered uncharged crimes in aggravation of his sentence, citing *Anderson v. State* (1983), Ind., 448 N.E.2d 1180, and *McNew v. State* (1979), 271 Ind. 214, 391 N.E.2d 607. However, as we noted in *Mahla v. State* (1986), Ind., 496 N.E.2d 568, the dictum in *Anderson, supra*, which states "the trial judge could not properly use uncharged crimes or the acquittals to enhance the presumptive sentences," 448 N.E.2d at 1186, misstates its supporting authority, *McNew, supra*, which held "a judge does not err in considering prior arrests which had not been reduced to convictions in determining what sentence to impose." 271 Ind. at 221, 391 N.E.2d at 612.

In *Mahla, supra*, we noted our prior approval of the use of uncharged crimes as aggravating circumstances "[i]n the particular area of criminal sexual abuse offenses...." 496 N.E.2d at 575. This approval is based on the rationale that prior uncharged crimes of that nature reliably indicate a high probability that the defendant will commit similar crimes in the future. The same rationale applies to the case at bar, where appellant's former girl friend testified he had beaten and nearly choked her to death during what he claimed was an alcoholic blackout. Such an instance of senseless violence nearly resulting in death is sufficiently like the instant crimes to signal a likelihood of recurrence amounting to an appropriate aggravating circumstance.

"The aggravating factor being considered is a pattern of criminal activity or conduct from which the sentencing judge may evaluate whether this person might continue the pattern and commit crimes in the future." *Jordan v. State* (1987), Ind., 512 N.E.2d 407, 410.

The trial court did not err in considering evidence of certain uncharged crimes in enhancement of appellant's sentence.

Appellant argues his severe alcohol problem, his underlying intention to kill himself,

and the fact that no one was actually killed, are mitigating circumstances rendering his consecutive sentences manifestly unreasonable. In reviewing sentences, we consider the nature of the offense and the character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender. *Corder v. State* (1984), Ind., 467 N.E.2d 409; Ind.R.App.Rev.Sen. 2.

■ Appellant went on a rampage with two deadly weapons—his truck and a rifle. He shot at four people, wounding two—a store clerk and a police officer. He left his victims without medical attention, even disconnecting a telephone to cover his escape. It in no way accrues to appellant's credit that no one was killed nor more persons seriously injured. Appellant's sentence is not, under these circumstances, manifestly unreasonable.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The trial court refused an instruction requested by the defendant explaining the defense of voluntary intoxication. I know of no practical or legal reason to declare that such an instruction would not be proper in a case in which the defendant has also plead not guilty by reason of insanity.

A voluntary intoxication instruction should be given if evidence is presented which, if believed, is such that it could create a reasonable doubt in the mind of a rational trier of fact that the accused entertained the requisite specific intent. If .05 percent blood alcohol is enough to arrest for driving under the influence, and if .10 percent is legally intoxicated, then it seems only consistent that .2166 percent should entitle a criminal defendant to an instruc-

tion that the jury may consider his intoxication in determining specific intent.