Eugene McELROY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 29S00–8904–CR–348.

Supreme Court of Indiana.

May 10, 1990.

Daniel J. Pfleging, Christina, Waltz, White, Klotz & Pfleging, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PER CURIAM.

A jury trial resulted in the conviction of appellant of murder, for which he received an enhanced sentence of sixty (60) years.

The facts are: On the evening of November 14, 1987, appellant and his wife (the victim in this case) and her daughter Tara Goodner were at their home in Westfield, Indiana. Also present was Tara's boyfriend Brian, her cousin Robert Speck, his wife Lori, and their little boy.

The adults were drinking and playing games. Before the guests left, the victim went to bed. The last time she was seen by the guests was approximately a half hour later when she went to the bathroom. After the guests left, Tara went to bed at approximately 1:30 a.m.

A short time later appellant, who was wearing no clothing, entered Tara's room. She ordered him to leave. He apologized and left. She heard him go into the victim's bedroom. She heard some noises, including some moans, but thought nothing of it. Sometime later she heard appellant leave the victim's bedroom and close the door.

The next morning at 10:39 a.m. Sergeant Mitchell Russell of the Hamilton County Sheriff's Department was at home. The dispatcher called and said the appellant wanted to talk to Russell. Appellant then told Russell that he had killed his wife and wanted to meet Russell at the Sheriff's Department. Russell immediately called Sergeant Rhinebarger of the Indiana State Police and requested that Rhinebarger meet him at the Sheriff's Department. There the two officers met with appellant.

Appellant was advised immediately of his rights and acknowledged he understood them and signed a waiver. Appellant was interviewed immediately and also was interviewed for the second time at approximately 7:00 p.m. on that day. During both interviews, appellant told the officers that he had killed his wife and that they would find her in her bed at home. The officers went to appellant's home and found the victim in the bed with severe damage to her head, obviously inflicted by some blunt instrument.

The officers offered two or three times to call someone for appellant, but he did not want anyone notified. He stated: "I did it. Put me away. Kill me." Appellant told the officers that on several occasions his wife had asked him to kill her because of stress brought about by a failing business and the death of a daughter. Prior to his wife's death, appellant had talked to his brother about killing her.

Shortly after appellant was arrested, a motion was filed with the court to have appellant transferred from the Hamilton County jail to the Indiana Department of Correction for his own protection. The court ordered appellant sent to the Diagnostic Center in Plainfield. On February 4, 1988, both the State and appellant requested appellant's return to Hamilton County. The trial court ordered appellant transferred to the Indiana Reformatory at Pendleton, which is located in Madison County. The trial took place in August of 1988.

Appellant claims the trial judge erred when she excused prospective juror Howard Meeker. During the *voir dire* of Meeker, he advised the court that his family from out of state would be visiting during portions of the trial. He indicated that he would rather be with his family during their visit, but, if accepted, he would do his best to serve. However, neither the State nor appellant challenged Meeker, and he remained an acceptable member of the jury. The trial judge *sua sponte* excused Meeker from jury duty.

Appellant contends this was an abuse of discretion on the part of the trial court. He claims that because the prospective ju-

ror had been accepted by both parties, had stated that he would serve to the best of his ability if chosen, and had qualified in all respects, he was not entitled to be excused from jury duty. Many times this Court has stated that it is within the sound discretion of a trial judge to excuse a prospective juror.

In the case of *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964, this Court stated:

"A trial court has the inherent discretion to excuse prospective jurors. So long as that discretion is not exercised in an illogical or arbitrary manner, we will not interfere with it." *Id.* at 670, 419 N.E.2d at 967.

In *Holt v. State* (1977), 266 Ind. 586, 365 N.E.2d 1209, this Court stated:

"The burden of demonstrating prejudicial discrimination is on the defendant. In addition, trial courts have discretionary authority to excuse prospective jurors." *Id.* at 591, 365 N.E.2d at 1211.

In the case of *Tewell v. State* (1976), 264 Ind. 88, 339 N.E.2d 792, this Court, quoting from a Court of Appeals case, stated:

" 'The excusing of a juror on the court's motion rests in its sound discretion, and no error is committed where no injury results from the court's action.' " *Id.* at 89, 339 N.E.2d at 797.

In *Parrett v. State* (1928), 200 Ind. 7, 159 N.E. 755, this Court stated:

"[A]fter the jury had been selected and accepted finally, the court, of its own motion and without cause, peremptorily excused one of the jurors, who did not himself ask to be excused. The excusing of a juror by the court of its own motion is not reversible error in favor of the accused where it did not appear that he did not have a fair and impartial trial by a competent jury or that the state had exhausted all its challenges or that, by the action of the court, the panel was depleted." *Id.* at 24, 159 N.E. at 761.

There is nothing in this record to indicate that the jury panel was depleted to any detrimental extent by the court's excusing of the prospective juror. In fact, appellant makes no allegation in his brief that any specific miscarriage of justice was created by the dismissing of the prospective juror. We see nothing in this record to indicate that the trial judge abused her authority in dismissing the juror.

■ Appellant claims that juror William Inman, who did sit on the jury, falsely indicated during *voir dire* examination that he did not know appellant, when in fact he did know appellant. Appellant alleges that after trial he was informed by his sister that he had visited in William Inman's home on more than one occasion. We see nothing in this record to indicate such a fact.

The procedure to bring such a fact to the attention of this Court is outlined under Ind.Trial Rule 59(H)(1) and Ind.Crim.Rule 16. Under these rules, appellant has the duty to support any such claim by affidavits. We find no such affidavits in this record. Even if we would assume that appellant had in fact at some time in the past visited in the home of juror Inman, there is nothing in this record to indicate that the juror was cognizant of such a fact or that the relationship, if any, was close enough to question Inman's competency to sit as a juror. We observe that this fact was apparently unknown to appellant in view of his statement that he was informed by his sister after the trial that such a visitation had occurred. It seems logical to assume that if appellant had no independent recollection of such a visit, it is unlikely that juror Inman would have had such a recollection. In any event, we see nothing in this record to indicate that juror Inman was disqualified to act in this case.

■ Appellant contends that he was denied a fair trial and adequate assistance of counsel as a result of the trial court's order transferring him from the county jail to the Department of Correction. At the time that transfer was made, November 25, 1987, appellant was transferred to the Diagnostic Center, located in Plainfield, Indiana. When both the State and appellant petitioned the trial court to return appellant to Hamilton County, the court, on February 3, 1988, issued an order to trans-

port appellant to the Indiana Reformatory, which is located in Madison County adjoining Hamilton County, where appellant was to stand trial.

The trial did not take place until the latter part of August in 1988. Although appellant was at the Diagnostic Center, which is in excess of thirty-five miles from Noblesville, for two months and nine days, there is nothing in this record to indicate that this distance in any way prevented counsel from communicating with appellant or vice versa. However, we further would point out that from February until August appellant was incarcerated at Pendleton, which is located in the adjoining county.

Again, there is nothing in this record to indicate that counsel had any difficulty in communicating with appellant or that appellant had any difficulty in communicating with counsel, nor is there any indication in this record that counsel was unprepared to defend appellant during the trial. The trial court had the discretion to order appellant incarcerated in a safer location. Unless appellant is able to demonstrate prejudice from such incarceration, no reversible error is shown. *Nagy v. State* (1987), Ind., 505 N.E.2d 434. There is nothing in this record that demonstrates that the incarceration of appellant in any way interfered with counsel's ability to represent him.

Appellant contends the trial court erred in permitting evidence of statements made by appellant during his initial hearing in this cause. He takes the position that he was not represented by counsel at that hearing and that had he been represented by counsel he would not have made the statement, "No, I want to get it over with," or "Yes, I just want to plead guilty." The Sixth Amendment right to counsel attaches at or after the time adversary proceedings have been initiated by way of formal charge, indictment, information, or arraignment. *Brewer v. Williams* (1977), 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424; *Heffner v. State* (1988), Ind., 530 N.E.2d 297.

In the case at bar, the trial court fully complied with Ind.Code § 35–33–7–5. In attempting to arraign appellant and to ascertain whether he had employed counsel and had the funds to employ counsel, the trial court advised appellant that he had the right to remain silent and to have an attorney with him when he was being questioned as to any of the matters germane to the cause. In spite of the court's admonitions, appellant volunteered the above-quoted statements.

At no time did the court make any attempt to interrogate appellant concerning the facts of the case. The court, in fact, upon learning that appellant was not represented by counsel and that he did not have funds, advised him that counsel would be appointed, and notwithstanding appellant's claim that he wished to plead guilty, the court entered a plea of not guilty. Appellant was informed that this plea would remain in effect until he had adequate time to consult with appointed counsel and at that time a decision could be made between him and his counsel as to what plea he wished to make to the court.

Appellant claims the trial court erred in allowing Officer Rhinebarger to testify as to certain incriminating statements that appellant made during police interrogation but denying appellant the right to cross-examine the officer as to what appellant had said as to the manner in which the victim was killed. The trial court sustained the State's objection that such statements made by appellant were self-serving hearsay and as such should not be admitted. This ruling was erroneous.

Appellant is correct in his observation that the general rule is that when a party introduces part of a conversation or document, the opposing party is entitled to have the entire conversation or the entire instrument placed into evidence. In *Duff v. State* (1987), Ind., 508 N.E.2d 17, this Court was equally divided as to whether the rule against self-serving hearsay should give way to the introduction of an entire statement previously partially admitted. We are now able to resolve this question in favor of admissibility. In balancing the potential harm resulting from the introduction of self-serving hearsay against that resulting from the exclusion of relevant portions of prior statements otherwise ad-

mitted, we find persuasive the policy expressed in Ind.Trial Rule 43(A): "In any case, the statute or rule which favors the reception of evidence governs...." The issue is analogous to the use of depositions at trial, wherein Ind.Trial Rule 32(A)(4) instructs:

> If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in context to be considered with the part introduced, and any party may introduce any other part.

We conclude that the trial court erred in preventing appellant from cross-examining the officer as to the remainder of the statements.

■ However, we further find that such error does not require reversal because of appellant's ability to recite his recollection of the interrogation during his direct examination. The record in this case discloses that appellant testified in his own behalf at great length. When a defendant is testifying in person, he is free to tell his version of the entire matter as he sees fit. *Mueller v. State* (1988), Ind., 517 N.E.2d 788.

■ Appellant contends he was denied his constitutional rights in that he was found guilty on August 25, 1988, and was not sentenced until October 22, 1988. He points out that this is contrary to Ind.Code § 35–38–1–2(a), which states: "Upon entering a conviction, the court shall set a date for sentencing within thirty (30) days...." Appellant claims that by reason of the lapse of time the court was without authority to impose sentence and therefore he has been sentenced contrary to the statute and thus should be discharged.

It is obvious that the trial court did not comply with the statute and set the date for sentencing well beyond the thirty days following the entry of the judgment of conviction. However, as pointed out by the State, there is nothing in this record to reveal that appellant made any objection to the setting of the sentencing date, nor does appellant allege that he was harmed thereby other than his statement that the court had no jurisdiction to proceed after the expiration of the thirty days.

This Court has held, however, that trial courts are excused from exact compliance with the thirty-day sentencing requirement where there is good cause for delay and that such cause may be presumed where the record is silent as to the reason for the delay and the defendant made no objection. *Kindred v. State* (1988), Ind., 524 N.E.2d 279, 302.

In the case at bar, although the record contains no evidence of a reason for the delay in sentencing, we will presume good reason existed in the absence of any objection by appellant to the delay and in the absence of any showing of detriment to appellant caused by the delay. We see nothing in this record to justify a reversal by reason of the unexplained short delay in the sentencing.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.

GIVAN, J., concurs in result without separate opinion.