Ed Robert ANDERSON, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 281S51.

Supreme Court of Indiana.

May 26, 1983.

Richard Kammen, McClure, McClure & Kammen, Indianapolis, Allen F. Wharry, Martin & Wharry, Lebanon, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, Ed Robert Anderson, was charged in Marion County with the armed robbery and attempted murder of Sherrill Marshall, the armed robbery of Mashriki Verissimo, the armed robbery, criminal confinement and murder of Michael Krumlauf, and the armed robbery and murder of Izora West. George Anderson, unrelated to defendant, and Jeffrey Parker were also charged with the same crimes. Being juveniles, the three were originally charged by petition in the juvenile court. The juvenile court subsequently waived its jurisdiction and defendant, Parker, and George Anderson were transferred to the criminal court. After arraignment, the state filed an amended information seeking the death penalty against defendant. Accordingly, defendant's case was severed from the others and he was granted a change of venue to the Boone Superior Court. Defendant was convicted by a jury of the following:

Armed robbery (Marshall), Class B felony, Ind.Code § 35–42–5–1 (Burns 1979);

Attempted murder (Marshall), Class A felony, Ind.Code § 35–42–1–1 and § 35–41–5–1 (Burns 1979);

Armed robbery (Verissimo), Class B felony, Ind.Code § 35–42–5–1 (Burns 1979);

Armed robbery (Krumlauf), Class B felony, Ind.Code § 35–42–5–1 (Burns 1979); and

Criminal confinement (Krumlauf), Class B felony, Ind.Code § 35–42–3–3 (Burns Supp.1982).

The jury acquitted defendant of the murder of Michael Krumlauf and the armed robbery and murder of Izora West. Defendant now raises six issues in his direct appeal, which we consolidate into the following four:

1. Whether the trial judge erred in failing to order the state to disclose certain impeaching information;

2. Whether the trial judge erred by allowing William Hickman and George Anderson to testify;

3. Whether the trial judge erred in denying defendant's motion to require the state to disclose its "jailhouse informants"; and

4. Whether the trial judge erred in sentencing defendant. Defendant specifically does not challenge the sufficiency of the evidence.

The evidence at trial established that at approximately 7:00 p.m., on December 19, 1977, Jeffrey Parker, George Anderson, and defendant robbed Sherrill Marshall of both his money and his car. One of the three also shot Marshall in his face at close range. Marshall was not mortally wounded and later identified defendant as the one who shot him. Defendant admitted at trial that he took part in the robbery and was the one who shot Marshall. While driving around in Marshall's car, the three approached Mashriki Verissimo who was walking along East 36th Street on her way home from a friend's house. The evidence showed that defendant and Parker walked up behind

Verissimo and put a gun to her head thereby forcing her to give up her purse and package. At trial, defendant also admitted this to be true.

Still riding around in Marshall's car, the three spotted Michael Krumlauf driving on the north side of Indianapolis. They followed Krumlauf until he pulled into a driveway. When Krumlauf started to step away from his Malibu automobile, the three accosted him and forced him into the backseat of his car. One of the three sat in the backseat with Krumlauf as they began driving around again. Krumlauf was forced to take off most of his clothing and there was evidence suggesting that Krumlauf was forced to commit sexual acts. While driving around, the person sitting next to Krumlauf shot him three times in the head, killing him. Although Parker and George Anderson testified that defendant was the one who shot Krumlauf, defendant denied their claims stating that he was in the front seat of the car when the killing occurred. The jury acquitted defendant of Krumlauf's killing.

With Krumlauf's body still in the backseat, the three proceeded to the Ayr-Way Shopping Center on Lafayette Road in Indianapolis. There, one of the three left the car and accosted Izora West by attempting to grab her purse. When she resisted, she was shot in the head and killed. Again George Anderson and Parker testified that defendant killed West; defendant testified that Parker killed her. Two witnesses who were shopping at the Ayr-Way Center when West was killed noticed Krumlauf's Malibu automobile. They were able to see into the front seat of the car and identified defendant as the person seated on the passenger's side of the front seat. Further, they noticed that West's killer got into the backseat of the automobile. The jury acquitted defendant of West's killing.

The three subsequently dumped Krumlauf's body into the White River. Defendant was arrested at his home during the afternoon of December 20.

I.

■ On June 5, 1980, defendant filed what he styled as a "Renewed Motion for Disclosure of Impeaching Information." Previous discovery motions had been granted and this motion supplemented them. The motion requested the following information:

"1) Any and all records and information revealing prior felony convictions or guilty verdicts or juvenile adjudications attributed to each witness called by the State of Indiana, including but not limited to relevant 'rap sheets'.

"2) Any and all records and information revealing prior misconduct or bad acts attributed to the witness.

"3) Any and all consideration or promises of consideration given to or on behalf of the witness or expected or hoped for by the witness. By 'consideration' Defendant refers to absolutely *anything*, whether bargained for or not, which arguably could be of value or use to a witness or to persons of concern to the witness, including, but not limited to formal or informal, direct or indirect: leniency, favorable treatment or recommendations, or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, tax court, court of claims, administrative or other dispute with the State or with any other authority or with any other parties; criminal, civil or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness fees and special witness fees, provision of food, clothing, shelter, transportation, legal services or other benefits; placement in a 'witness protection program', informer status of the witness; and anything else which arguably could reveal an interest, motive or bias in the witness in favor of the State of Indiana, or against the defense, or act as inducement to testify or to color testimony.

"4) Any and all threats, express or implied, direct or indirect, or other coercion made or directed against the witness, criminal prosecutions, investigations, or potential prosecutions pending or which

could be brought against the witness, any probationary, parole, deferred prosecution or custodial status of the witness, and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions with the State or over which the State has real, apparent or perceived influence.

"5) The existence and identification of each occasion on which the witness has testified before any court, grand jury, or other tribunal or body or otherwise officially narrated in relation to this Defendant, the investigation, or the facts of this case.

"6) The existence and identification of each occasion on which each witness who was or is an informer, accomplice, co-conspirator, or expert has testified before any court, grand jury, or other tribunal or body.

"7) Any and all personnel files for the witness, the existence and identity of all federal, state and local government files for the witness and the existence and identity of all official internal affairs, internal investigation or public integrity investigation files relating to or connected with each witness who was or is a law enforcement officer.

"8) Any and all records and/or information which arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the State's evidence or which arguably could lead to such records information.

"9) The same records and information requested in items 1 through 8 above, with respect to each non-witness declarant whose statements are offered in evidence."

In response to this motion, the special judge of the trial court entered the following order:

"The court has carefully examined the 'Renewed motion for disclosure of impeaching information.'

"The court believes that some of the requested information might be the subject of a protected order, or otherwise by case law be of a mature (sic) that disclosure might go beyond what is required to be disclosed as a matter of law.

"The court does not understand what 'prior misconduct' and 'bad acts' might encompass in paragraph 2).

"The court believes that the Prosecutor's Office of Marion County does not have access to all personnell (sic) files and etc. as requested in paragraph 7). And, there are other areas of doubt, as to the ability of the State to have access to, or be able to provide records of witnesses.

"Further, the present Special Judge has examined the record of this cause and finds discovery was ordered by the prior Judge, and this Special Judge has personal knowledge of discussing the question of discovery in open court.

"However, this Judge believes that all counsel, whomever they represent, have a primary and prior duty to the truth, and to supply that truth to a jury without reservation. That withholding of evidence, or unlawful shaping of admissable (sic) facts is not acceptable.

"Therefore, the court does now order both sides to produce; within their power to produce, all of the requested information mentioned in defendants (sic) motion—each to the other according to established case law."

Defendant's complaint is that he was denied due process of law because, on the one hand, the judge's order was tantamount to denying his motion, and on the other hand, the order was so incomprehensible that neither side could know whether they had complied. Apparently the state filed nothing in response to this motion. Defendant does not argue, however, that there was anything for the state to file, nor does defendant indicate any particular information he failed to receive or any evidence that was admitted at trial that should have been disclosed to him under this motion. Neither does defendant claim prejudicial error. Rather, defendant asks the Court to decide prospectively whether the trial judge's order met constitutional due process requirements.

Based on the record in this case, we find that the trial court's order neither denied defendant's motion nor was totally incomprehensible; defendant was not denied due process. As the trial judge stated, the motion was extremely overbroad and asked for information that was either impossible or unreasonably difficult for the state to obtain. The order exhorted all counsel to furnish to each other any of the requested information which they possessed or could obtain through reasonable efforts. The trial judge explicitly ordered both sides to produce all information "within their power to produce." Considering defendant's overbroad request, we find no fault with the trial judge's order. A criminal defendant is not allowed to go on a "fishing expedition." Furthermore, the state is not required to "lay bare its case in advance of trial." *Bernard v. State,* (1967) 248 Ind. 688, 692, 230 N.E.2d 536, 540; *Brandon v. State,* (1978) 268 Ind. 150, 374 N.E.2d 504.

■ This Court also has held that when there is a violation of a trial court's discovery order, the remedies are twofold. The trial court should either exclude the evidence that should have been disclosed but was not, or grant a continuance to allow the aggrieved party an opportunity to investigate the previously undisclosed evidence. *O'Conner v. State,* (1980) Ind., 399 N.E.2d 364, 366. Exclusion of the undisclosed evidence is the proper remedy when the state has acted in such bad faith that there is no other way to provide the defendant a fair trial. Otherwise, a continuance is the most appropriate remedy. Defendant has not shown that any evidence was admitted that had not been disclosed nor that he made any objection at trial alleging a violation of the discovery order. Defendant only argues in a general way that he should have been given more information about the state's witnesses. Defendant requested a continuance once, concerning just one witness, and that continuance was granted. No further objections were made during the trial. Moreover, defendant admitted on the witness stand that he did, in fact, commit the crimes for which he was subsequently convicted. He was acquitted of those crimes for which he professed innocence. Defendant makes no showing that the discovery order denied him due process.

## II.

Defendant also alleges that the trial court erred in letting George Anderson and William Hickman testify for the state because the testimony unfairly prejudiced defendant. George Anderson and defendant were charged with the same crimes but their cases were severed because the state did not seek the death penalty against George Anderson. It was likely that George Anderson would be a witness at defendant's trial, however, because his name was on defendant's witness list filed January 26, 1979. On February 7, 1979, a deputy prosecutor certified to the trial court in writing that George Anderson would not be called by the state to testify in their case-in-chief. Subsequently, defendant filed a motion to limit, requesting that the state be prohibited from calling George Anderson during defendant's trial. The record is unclear whether the judge ever ruled on this motion. After the jury was sworn, but before any witnesses were called, the state entered into a plea agreement with George Anderson. One of the provisions of the agreement was that Anderson would testify against defendant. In open court, the state promptly advised defendant that, as a result of the plea agreement, the state intended to call George Anderson as a witness in its case-in-chief. The court granted defendant a continuance for the purpose of examining George Anderson. Anderson was called as a witness for the state four days later. Defendant now argues it was error for the court to permit the state to call George Anderson because it resulted in trial by ambush.

■ The usual remedy, although not the sole one, when a party is surprised by an additional witness is to move for a continuance. *Rowley v. State,* (1979) Ind., 394 N.E.2d 928. Unless the state's action is so misleading that it denies defendant a fair trial, a continuance is appropriate. It is

within the trial judge's discretion to determine if a continuance can satisfy the dictates of fundamental fairness, and absent clear error, his decision will not be disturbed. *Reid v. State,* (1978) 267 Ind. 555, 372 N.E.2d 1149.

■ The defendant has not shown that the state acted in bad faith or that he was denied a fair trial. There is no evidence that the state intentionally misled defendant. The state decided to call George Anderson only after a plea bargain had been obtained. In addition, all parties knew that George Anderson was a co-defendant; therefore, the specifics of his involvement could not be totally outside the defendant's knowledge. In fact, one of defendant's attorneys had petitioned the trial court to pay him for his review of George Anderson's records and for his three hours of attendance at George Anderson's trial on August 9, 1979. Furthermore, it appears that defendant was given ample time to examine Anderson and to otherwise prepare for his testimony. A continuance was the proper remedy.

■ Defendant also argues that the trial court erred in permitting the testimony of William Hickman. Hickman testified that at about 6:00 or 6:30 p.m. on December 19, 1977, he was in the vicinity of 29th Street and Northwestern Avenue. While walking south towards North Street, he ran into two men whom he thought were throwing firecrackers but who were actually shooting a pistol. One of the men shouted an abusive comment at Hickman. Hickman was then shot in his side. He identified defendant as one of the two men who had accosted him. This incident was approximately one hour prior to the period of time during which defendant and the others were charged with having committed the instant spree of robberies and murders. The incident was also in the same general vicinity. Defendant contends that the only purpose of this testimony was to prejudice him and that the testimony had little probative value.

We find no merit in this contention. As we have repeatedly held, "happenings near in time and place which complete the story of the crime are admissible under the theory of *res gestae.*" *Brown v. State,* (1981) Ind., 417 N.E.2d 333, 337. *See also Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843. Hickman's testimony concerned an incident near in time and place to the charged crimes and, therefore, was properly admitted as being part of the *res gestae.* In addition to the probative value of this testimony, we note again that defendant was convicted of only those crimes to which he confessed before the jury and was acquitted of those to which he professed innocence. Defendant shows no prejudicial error committed by the trial court in regard to this witness.

### III.

■ Defendant next contends that the denial of his motion to compel disclosure of "jailhouse informants" deprived him of his Sixth Amendment right to learn who the informants were. Defendant filed a "Motion for List of 'Jailhouse Informants' and Request for Hearing," alleging that the state had embarked upon a program to "seed" the Marion County Jail with informants to gain information about particular inmates. Defendant specifically alleged that the state might call one such "jailhouse informant," Tommy Thompson, to testify against him at his trial. Defendant contended that because of "the willingness of such informants to lie," he was entitled to a list of all "jailhouse informants" employed by the Marion County Prosecutor's office, the Indianapolis Police, and the Marion County Sheriff's Department within the preceeding eighteen months, and a log showing when any such informants were assigned to a cell block occupied by defendant. The trial court denied the motion.

Prior to the offering of Thompson as a witness at trial, defendant called to the stand Detective Burgess of the Indianapolis Police Department hoping to prove the allegation that the state was using "jailhouse informants." The effort was an attempt to foreclose the state from calling Thompson as a witness. Detective Burgess testified that he met Thompson for the first time on

December 30, 1977, at Thompson's request. He also testified that to his knowledge no other homicide officer had ever contacted Thompson nor had Thompson ever given to any member of the Indianapolis Police Department any information derived from his jailhouse conversations. Defendant made no further objection to Thompson testifying, nor did he renew his motion at trial. Consequently, any error as to this witness has been waived. *See Owens v. State,* (1975) 263 Ind. 487, 333 N.E.2d 745; *Tinnin v. State,* (1981) Ind., 416 N.E.2d 116. Furthermore, defendant makes no showing that there were any "jailhouse informants." Even though Thompson was defendant's cell mate for a few days while he was in the Marion County Jail and testified to conversations defendant had with Thompson and others in their cell, defendant makes no showing that Thompson was "planted." In fact, the testimony of Detective Burgess suggests the contrary. Also, none of the state's other witnesses gave any appearance of being "jailhouse informants." Because defendant has offered no evidence from which any reasonable inference can be drawn that Thompson was a police informant, or that any other informants were used, we find no constitutional issue presented for our consideration.

### IV.

Defendant next claims that the trial court improperly sentenced him. For each of defendant's four Class B felony convictions, the court sentenced him to the presumptive ten-year term plus a five-year enhancement. For defendant's Class A felony conviction, the court imposed the presumptive sentence of thirty years plus ten years' enhancement. The trial court ordered that the sentences be served consecutively. The cumulative effect was to sentence defendant to one hundred years in prison. Defendant argues that the trial court did not sufficiently justify the enhanced sentences or its order of consecutive terms because the court made no specific findings of aggravating circumstances. Defendant also alleges that the trial court erroneously considered the two murder charges and the

shooting of Hickman as aggravating circumstances because defendant had been acquitted of the murders and was never charged with the Hickman shooting.

Defendant is correct that the trial judge could not properly use uncharged crimes or the acquittals to enhance the presumptive sentences. *McNew v. State,* (1979) Ind., 391 N.E.2d 607. However, we cannot say that the sentence imposed is "manifestly unreasonable" based on the record. Ind.R.Ap.Rev.Sen. 2(1). Although the trial judge did refer to the two murders and the shooting of Hickman, the judge specified other aggravating circumstances to justify the enhanced and consecutive sentences. The judge thoroughly reviewed all of the sentencing standards in Ind.Code § 35–4.1–4–7 (§ 35–50–1A–7 Burns 1979) and explicitly found that none of the mitigating circumstances was applicable to defendant's case. The trial judge further found that several aggravating circumstances were present. Specifically, the judge considered the seriousness of defendant's crimes, the necessity of not depreciating that seriousness, and the defendant's prior juvenile record including the fact that defendant was just being released from parole when the current crimes were committed. These considerations were based on the presentence report and the trial record depicting the type of crimes defendant had committed, the number of crimes, and the particular manner in which defendant had committed them. The aggravating circumstances were sufficiently detailed to justify the enhanced sentences in this case.

Furthermore, it was proper for the trial court to use these same aggravating circumstances to impose consecutive sentences. We have consistently held that alternative ways of increasing a particular sentence are not mutually exclusive under our present sentencing statutes. *Humes v. State,* (1981) Ind., 426 N.E.2d 379; *Washington v. State,* (1981) Ind., 422 N.E.2d 1218; *Bish v. State,* (1981) Ind., 421 N.E.2d 608; *Inman v. State,* (1979) Ind., 393 N.E.2d 767. In addition, it is within the discretion of the trial court to

determine whether sentences are to be served concurrently or consecutively. Ind. Code § 35–50–1–2(a) (Burns 1979 Repl.). Based on the record of this case, we cannot find that the sentence is manifestly unreasonable.

■ Finally, defendant complains that the trial court erred in sentencing him to separate terms for both the attempted murder and armed robbery of Sherrill Marshall because the robbery was the underlying felony for the attempted murder. Defendant is correct that under our case law an armed robbery conviction merges into a felony murder conviction when the armed robbery is the underlying felony. *Biggerstaff v. State,* (1982) Ind., 432 N.E.2d 34, 37; *Williams v. State,* (1978) 267 Ind. 700, 703, 373 N.E.2d 142, 144; *Chandler v. State,* (1977) 266 Ind. 440, 458, 363 N.E.2d 1233, 1243. There is a basic factual distinction, however, between this case and those cases applying the merger doctrine. Here there was no actual killing during the robbery of Marshall. Rather, the defendant was charged with *attempted* murder and armed robbery. The merger doctrine is inapplicable in this case.

Although the defendant has not based his argument on whether the attempted murder sentence was proper, we will review it in light of our recent decision in *Head v. State,* (1982) Ind., 443 N.E.2d 44, to determine if defendant was erroneously sentenced for the nonexistent crime of attempted felony murder. In *Head,* we concluded that "absent death the applicability of the felony-murder rule is never triggered." *Id.* at 50. Thus the crime of attempted felony murder does not exist. We also stated, however, that attempted murder still may be charged and proven under Ind.Code § 35–42–1–1(1) (Burns 1979 Repl.) if defendant exhibits an intent to murder during the course of any of the underlying felonies but no death occurs. *Head v. State, supra.*

In the present case, Count VII of the information charged defendant with attempting "to knowingly kill" Sherrill Marshall during the commission of the robbery.

The information alleged that while armed with a handgun, defendant shot "at and against the head of said Sherrill Marshall with said handgun ... which conduct constituted a substantial step toward the commission of the crime of Murder." This language was sufficient to charge defendant with attempted murder as defined in Ind. Code § 35–42–1–1(1), *supra,* and Ind.Code § 35–41–5–1 (Burns 1979 Repl.) and to satisfy the constitutional requirement that defendant be informed of the "nature and cause of the charge against him." *Ind. Const.* art. 1, § 13; *Head v. State, supra.* The jury found the defendant guilty of attempted murder as charged in Count VII, and the evidence supports the verdict. At trial, defendant testified that he did shoot Marshall with a handgun. Although defendant said he did not intend to kill Marshall, he also stated that he knew the act was dangerous. We have consistently held that the "intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death." *Williams v. State,* (1982) Ind., 433 N.E.2d 769, 774; *Zickefoose v. State,* (1979) 270 Ind. 618, 388 N.E.2d 507; *Jackson v. State,* (1978) 267 Ind. 501, 371 N.E.2d 698. Consequently, the jury could infer the necessary intent to convict defendant of attempted murder as charged in the information. Based on the record in this case, we find that defendant was charged, convicted, and sentenced for the attempted murder under subsection (1) of Ind.Code § 35–42–1–1 and not for the nonexistent crime of attempted felony murder. The robbery conviction was not the underlying felony for the attempted murder conviction. Defendant could be sentenced to separate terms for the two crimes because each of the crimes involves an essential element distinct from the other. *Head v. State, supra.* See also *Clay v. State,* (1982) Ind., 440 N.E.2d 466; *Wilson v. State,* (1981) Ind., 418 N.E.2d 1150.

For all of the foregoing reasons, there was no reversible trial court error and the judgment and sentence are affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., concurs in result only.