**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 24 2012, 8:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**THOMAS C. HINESLEY**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KELLY A. MIKLOS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LATINE DAVIDSON,                      )
                                      )
    Appellant-Petitioner,             )
                                      )
      vs.                           )   No.  10A04-1112-PC-695
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Respondent.              )

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Daniel E. Moore, Judge
Cause No. 10C01-0401-PC-001

**July 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Latine Davidson ("Davidson") appeals the denial of her petition for post-conviction relief, which challenged her 120-year sentence for two counts of Murder, imposed by the trial court after the State failed to secure the death penalty.[1]  We affirm.

## Issues

Davidson presents four issues for review.  We address the two issues which are not waived, res judicata, or procedurally defaulted:[2]

---

[1] Davidson does not contend that she was erroneously convicted of Murder; rather, she seeks revision of her sentence.

[2] Post-conviction procedures do not afford petitioners with a "super-appeal"; rather, the post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. Reed v. State, 856 N.E.2d 1189, 1194 (Ind. 2006).  The purpose of a petition for post-conviction relief is to provide petitioners the opportunity to raise issues not known or available at the time of the original trial or direct appeal. Stephenson v. State, 864 N.E.2d 1022, 1028 (Ind. 2007).  If an issue was known and available but not raised on direct appeal, the issue is procedurally foreclosed. Id.  If an issue was raised and decided on direct appeal, it is res judicata. Id.  Moreover, collateral challenges to convictions must be based upon grounds enumerated in the post-conviction rule. Shanabarger v. State, 846 N.E.2d 702, 707 (Ind. Ct. App. 2006), trans. denied; see also Post-Conviction Rule 1(1).

   Davidson seeks to have her sentence reviewed for "inappropriateness" pursuant to Indiana Appellate Rule 7(B), asserting that, because the law has changed, the issue was unavailable to her on direct appeal.  Since Davidson's appeal was perfected, the standard by which appellate courts review sentences has changed from "manifestly unreasonable" to "inappropriateness."  Ind. Appellate Rule 7(B) (effective January 1, 2003).  Nonetheless, the issue of the propriety of her sentence was known to Davidson at the time of her direct appeal and was in fact pursued.  The Indiana Supreme Court declined to revise Davidson's sentence, concluding "[w]e find no reversible error in appellant's sentencing." Davidson v. State, 558 N.E.2d 1077, 1092 (Ind. 1990).  She is not entitled to present, in post-conviction proceedings, a free-standing allegation that she was improperly sentenced.

   Davidson also articulates an issue concerning the denial of pre-sentencing motions for a continuance to prepare mitigating evidence and for an additional psychological evaluation.  This was likewise an issue available to her on direct appeal.  Indeed, the Court addressed the denial of Davidson's "Motion for Continuance and Psychological Evaluation" and found an absence of prejudice: "We find it hard to imagine that appellant held back, at the death penalty phase before the jury, any possible evidence in mitigation which might be used subsequently to reduce a term of years. Moreover, appellant fails to specify what evidence she might have introduced had her continuance been granted. Absent a showing of prejudice, we find no abuse of the trial court's discretion in denying the instant motion for continuance." Id. at 1091.  Again, the free-standing allegation of error is not available to Davidson in post-conviction proceedings.

2

I. Whether she was denied the effective assistance of trial counsel at sentencing; and

II. Whether she was denied the effective assistance of appellate counsel in presenting a challenge to her sentence.

**Facts and Procedural History**

On direct appeal, the Indiana Supreme Court recited the relevant facts as follows:

In the early morning hours of July 23, 1983, police were called to appellant's address regarding a possible infant drowning. Appellant's daughter, Shaccara, was transported to the hospital, but resuscitation measures failed to revive her. Appellant calmly explained that Shaccara had been suffering convulsions in the night, that she had put her in the bathtub to reduce her fever, and that after heating a bottle in the kitchen, she returned to the bath to find the baby face down and limp in the water.

Dr. Frances Masser, the pathologist who performed the autopsy on Shaccara, testified the baby's death was consistent with fresh-water drowning. She stated that a 14-month-old child would hold her head above water unless she were rendered unconscious, which would require some form of injury or disease leaving signs apparent during an autopsy, and that no such signs were found. Dr. Masser also testified that an adult easily could drown a 14-month-old child simply by holding her head under five to six inches of water.

On June 20, 1983, appellant had applied for AFDC welfare payments, and on July 5, 1983, she was denied payments. On July 7, appellant was informed that a policy on Shaccara's life, previously maintained by her deceased mother, would lapse unless she took over paying the premiums. Appellant was then beneficiary of the policy. She agreed to do so, obtained some cash from a person then present and paid the premium. In December of 1983, appellant received $5000 in benefits from the life insurance policy on Shaccara.

In October of 1983, appellant gave birth to a son she named Rodrigues Sanchez Escabar Felicciones, and two weeks later they moved to Louisville to live with one Darrell Cook. Two months later she moved in with her aunt, Dodie Benedict, in New Albany, but left 2-month-old Rod with Juan Davidson at the latter's mother's home in Jeffersonville, where appellant herself moved in May of 1984.

In June of 1984, appellant, Rod, and Juan moved in with Linda Jones and her husband in New Albany. At this time, appellant was six months pregnant, and while living with the Joneses she married Juan Davidson. Linda Jones testified that while the Davidsons lived in her home, appellant took care of Juan while Juan took care of Rod; that appellant wished aloud that Rod were not around because Juan spent more time with Rod than with her; and that appellant disciplined Rod by holding him upside-down in the bathroom and smacking his bottom with the sole of a wet shoe.

Also while living with the Joneses, appellant took out a life insurance policy on Rod worth $3000; this coverage lapsed after two months due to nonpayment. The selling agent testified that appellant had been disappointed at her inability to purchase vastly greater coverage on Rod's life.

In October of 1984, appellant gave birth to another son, who she named Mersherjuan Olean Davidson. Appellant and her husband, Juan, both were unemployed at this time, and after a partial denial of A.F.D.C. benefits, they moved back into the home of Juan's mother, Lola Davidson, about one month after Mersherjuan's birth. Appellant made it apparent that she disliked this arrangement and tolerated it only because she was unable to afford a home of her own.

On January 3, 1985, appellant contacted an agent for the National Life & Accident Insurance Company and applied for a policy on Rod to become effective that same day. For a monthly premium of $18.47, she purchased a policy having a face value of $20,000 with an accidental death (double indemnity) rider. The selling agent testified that at the time of writing Rod's policy, he was unaware of his company's regulation imposing a $10,000 ceiling on policies written to insure the lives of children whose parents receive A.F.D.C. benefits.

On the following day, Juan found 14-month-old Rod dead in the bathtub. Rod was taken by ambulance to the Clark County Hospital, where the emergency room physician attempted resuscitation but pronounced him dead thirty-five minutes after arrival. The doctor testified he found Rod's mouth and lungs full of frothy water but could find no signs of any bruising, swelling, lacerations or abrasions. He also testified that there was no reason why a 14-month-old child could not right himself after falling into six inches of water unless he were to be rendered unconscious, which would leave some sign of the trauma causing the loss of consciousness.

On the day of Rod's demise, appellant had awakened around eleven a.m. and then had run a bath for herself and Rod. She next took Rod downstairs, fed him, and watched soap operas with her mother-in-law Lola and a neighbor, Betty Johnson, until around one p.m. when appellant remarked she was going to put Rod down for his nap with her husband Juan, who was still in bed.

After taking Rod upstairs, appellant left the house to buy a bag of beans, ostensibly because there was no food in the home. After returning from the store, she complained of cramps and back pain and went to lie down in Lola's downstairs bedroom. She then arose and obtained Betty Johnson's permission to go to the latter's apartment down the hallway to use her telephone. After appellant left, Juan got up and discovered Rod lying in the water in the bathtub.

Various witnesses testified to appellant's unemotional demeanor subsequent to the discovery of Rod's drowning. When Juan's brother, James, started that evening to cook the beans appellant had purchased at the store, she told him not to cook the beans because she needed them for evidence. Appellant closely tracked news coverage of Rod's death and corrected out loud one article which reported Rod had been found with his arms extended from his sides; she stated his arms had lain next to his sides, and then added that Juan had told her this fact.

Betty Johnson's daughter, Regina, testified appellant had told her that she was assured of collecting Rod's life insurance proceeds because his death would be resolved either as accidental or as the result of Lola's child neglect. Appellant also told Regina of her plans to buy a car, take a honeymoon trip with Juan, and move into a house of their own.

Instead, however, the police investigation led to a coroner's inquest, a grand jury investigation, and a Child In Need of Services (CHINS) proceeding concerning appellant's remaining child, Mersherjuan. After consulting with her attorney, appellant made an agreement with the prosecutor to undergo a polygraph examination into the circumstances of the deaths of Shaccara and Rodrigues, stipulating the results would be admissible in any subsequent trial. The polygraph examiner concluded appellant was not telling the truth about her children's deaths. Consequently, she was charged with the murders of her two children, which charges were joined for trial and culminated in the instant convictions.

Davidson v. State, 558 N.E.2d 1077, 1081-1082 (Ind. 1990).

5

In her direct belated appeal, Davidson challenged her conviction and her 120-year aggregate sentence (having received two consecutive sixty-year sentences). The Indiana Supreme Court addressed issues concerning severance of the charges, pre-trial and pre-sentencing motions for experts, denial of pretrial transcripts, admission of polygraph, grand jury and CHINS evidence, spousal privilege, effectiveness of pretrial counsel, alleged conflict of interest of pretrial attorney, voluntariness of a pre-trial statement, denial of a motion for mistrial, admission of other crimes evidence, admission of documentary evidence, admission of evidence of financial motive and paternity, and sentencing error. See id. at 1082-92. The conviction and sentence were affirmed. Id. at 1092.

On January 2, 2004, Davidson filed a pro-se petition for post-conviction relief. With assistance from the State Public Defender, the petition was amended on January 21, 2011. The post-conviction court conducted hearings on August 15 and 17, 2011. On November 16, 2011, the post-conviction court entered its Findings of Fact, Conclusions of Law, and order denying Davison post-conviction relief. She now appeals.

**Discussion and Decision**

Post-Conviction Standard of Review

The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. On review, we will not reverse the judgment of the post-conviction court

6

unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. Id. In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

## I. Effectiveness of Trial Counsel

### Standard of Review

To establish a post-conviction claim alleging a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). "First, a defendant must show that counsel's performance was deficient." Id. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." Id. "Second, a defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial," that is, a trial where the result is reliable. Id. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that is sufficient to undermine confidence in the

7

outcome. Id. Further, we "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002).

Counsel is to be afforded considerable discretion in the choice of strategy and tactics. Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. Id. In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. Autrey v. State, 700 N.E.2d 1140, 1141 (Ind. 1998).

Analysis

Pursuant to Indiana Code Section 35-50-2-9(b)(8), the State asserted that Davidson had committed multiple murders and should be executed. Her defense team presented several mitigation witnesses, including a psychologist who had volunteered his services and had examined Davidson and administered intelligence testing. At trial and at sentencing, testimony was elicited regarding Davidson's limited intellectual functioning,[3] youthfulness, lack of criminal history, good conduct while incarcerated, domestic violence perpetrated upon her by her husband, and her abusive and chaotic upbringing. After deliberation, the

[3] She was believed to have an intelligence quotient of 82 to 86, consistent with borderline normal intellectual functioning.

8

jury reported that it was deadlocked and unable to make a recommendation as to the death penalty; the trial court was then obliged to consider the death penalty or a term of years without jury recommendation.[4]

On November 12, 1986, the trial court set a sentencing date of December 2, 1986. Davidson filed a "Motion for Continuance and Psychological Evaluation" to prepare mitigating evidence regarding a potential death sentence. Davidson, 558 N.E.2d at 1091. The day prior to trial, the State filed a nine-page sentencing recommendation based upon factors enumerated in the felony sentencing statute[5] as opposed to the death penalty statute. Davidson's counsel renewed the motion for a continuance and evaluation, based in part upon a need to respond to the State's recommendation. See id. The motion was denied; however, the State withdrew the portion of its recommendation dealing with the felony sentencing considerations and Davidson's counsel moved to incorporate the evidence presented before the jury at the penalty phase, which motion was granted. See id. The trial court rejected the death penalty.

Accordingly, Davidson received such vigorous representation that, despite her death-penalty eligibility, she instead received a term of years. However, she received a maximum sentence of sixty years for each murder, to be served consecutively.[6] On appeal, Davidson contends that counsel was ineffective for "failing to prepare, present, and argue Davidson's

---

[4] Ind. Code § 35-50-2-9(f) (1985).

[5] Ind. Code § 35-38-1-7 [repealed].

[6] At that time, Indiana Code Section 35-50-2-3 provided for a fixed term of forty years, with no more than twenty years added for aggravating circumstances or no more than ten years subtracted for mitigating factors.

many mitigating factors at the sentencing hearing." Appellant's Brief at 21.

Although she finds fault with her trial counsel for failure to present additional mitigating evidence, Davidson has not developed an evidentiary record, in post-conviction proceedings, of additional mitigating evidence. She baldly asserts that additional mitigating evidence could have been proffered, without identifying the evidence that existed but was unknown by the trial court who presided over the trial and the sentencing hearing before the jury.[7]

The trial record reveals that at least one of Davidson's attorneys <u>suspected</u> that additional mitigating evidence of psychosis might be uncovered. According to the final motion for a psychological evaluation at public expense, counsel believed that Davidson suffered from a multiple personality disorder. However, this did not prove to be the case when Davidson was subsequently evaluated in 2011. The examining psychiatrist, Dr. Phillip Coons, concluded that Davidson did not suffer from multiple personality disorder or any psychosis. In his opinion, she was depressed and shy, and had likely been depressed at the time of her trial. He further opined that Davidson – who had attained a college degree while in prison – was likely of normal intelligence, and that her poor performance in high school and on standardized tests had likely been due to her chaotic environment, abuse, and multiple family moves. In other words, a post-conviction psychological evaluation did not indicate that Davidson lacked appreciation of the gravity of her crimes; it suggested that she was

_____

[7] As we have previously noted, on direct appeal, the Indiana Supreme Court made the following observation: "We find it hard to imagine that appellant held back, at the death penalty phase before the jury, any possible evidence in mitigation which might be used subsequently to reduce a term of years. Moreover, appellant fails to specify what evidence she might have introduced had her continuance been granted." <u>Davidson</u>, 558 N.E.2d at 1091.

likely capable of more sophisticated reasoning than testing at the time of trial had indicated. Davidson has not demonstrated that trial counsel's performance was deficient for failure to present additional mitigating evidence.

Davidson also argues that, even if trial counsel made appropriate decisions and performed adequately, trial counsel was "rendered ineffective by Davidson's original attorney." Appellant's Brief at 21. Citing United States v. Cronic, 466 U.S. 648 (1984), she claims that the surrounding circumstances justify a presumption of ineffectiveness. "Cronic established, in effect, a narrow exception to the two-pronged Strickland test[.]" Conner v. State, 711 N.E.2d 1238, 1254 (Ind. 1999).

In Cronic, a defendant charged with mail fraud was appointed a real estate attorney with no jury trial experience twenty-five days before trial, although the Government had prepared for over four and one-half years. See Cronic, 466 U.S. 648. Ultimately, the United States Supreme Court rejected a claim of ineffective assistance of counsel but suggested that, in limited circumstances of extreme magnitude, "a presumption of ineffectiveness" may be justified. 466 U.S. at 662. Such extreme circumstances are independently "sufficient [to establish a claim of ineffective assistance] without inquiry into counsel's actual performance at trial." Id. Three such situations were identified by the Cronic Court: (1) when counsel is completely denied; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; or (3) when surrounding circumstances are such that, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a

11

presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Id. at 659-60.

In evaluating a claim regarding the third situation, alleged systemic defects in a county indigent defense system, our Indiana Supreme Court reiterated that the burden under Cronic is "extremely heavy." Games v. State, 684 N.E.2d 466, 481 (Ind. 1997), modified on other grounds, 690 N.E.2d 211 (Ind. 1997). To presume prejudice under Cronic in a post-conviction proceeding, the petitioner must show that "the circumstances completely deprived [her] of any meaningful opportunity to subject the State's evidence to adversarial testing" and also must convince the appellate Court that, to the extent the claim rests upon factual issues, the evidence presented during the post-conviction proceeding is without conflict and, as a whole, leads unerringly and unmistakably to a decision opposite the post-conviction court's rejection of the petitioner's claim. Id. at 479-80. See also Conner, 711 N.E.2d at 1255 (observing that "theoretical imperfections alone will not satisfy the extremely heavy Cronic burden and force us to find a Cronic exception to the Strickland analysis").

Davidson asserts that pretrial counsel rendered poor advice and allowed Davidson to relinquish her right to remain silent on multiple occasions, effectively setting up trial counsel for failure regardless of their efforts. On direct appeal of Davidson's conviction, the Court observed that Davidson had given her police statement when she was not in custody and had not yet been charged. Davidson, 558 N.E.2d at 1088. Accordingly, citing Whitehead v. State, 511 N.E.2d 284 (Ind. 1987) [now overruled on other grounds], the Court further

12

observed: "her right to counsel had not yet attached." Davidson, 558 N.E.2d at 1088.[8]

However, the Court reviewed pretrial counsel's performance as necessary to address

certain allegations of error made by Davidson:

> Appellant contends the polygraph evidence should not have been admitted because the attorney who represented her during that time rendered ineffective assistance by incompetently advising her to submit to the test and that his performance suffered due to a conflict of interest. The funeral director who handled Rodrigues' arrangements, Mr. Baity, also arranged for Louis McHenry to represent appellant in her attempt to collect the insurance money. McHenry then served as appellant's counsel throughout the CHINS, grand jury, and coroner's inquest proceedings. He discontinued his representation when criminal charges were filed against appellant subsequent to the polygraph examination and defense counsel was appointed by the court.
>
> A mere possibility of a conflict of interest is not sufficient to impugn a criminal conviction[.] . . .
>
> Regarding McHenry's alleged incompetence in allowing appellant to submit to the polygraph test, during the suppression hearing appellant introduced the testimony of attorney Edwin S. Sedwick, who opined that to so advise a client accused of two separate murders would amount to ineffective assistance. However, McHenry spent thirty-five minutes just prior to the examination explaining to appellant the agreement in stipulation of polygraph, waivers and certification of understanding, and advisement of rights; throughout all the proceedings, appellant maintained her innocence; and in light of the stipulation's provision that the State would not pursue charges if the test results indicated appellant's noninvolvement in the drowning, counsel's failure to dissuade her from undergoing the test clearly represents a sound tactical decision such as not to be condemned "through the distortions of hindsight." Slaton v. State (1987), Ind., 510 N.E.2d 1343, 1345. We find no error in the admission of the polygraph evidence.
>
> Appellant contends the trial court erred in admitting into evidence the tape recordings and transcripts of her grand jury, CHINS hearing and coroner's inquest testimony, the coroner's verdict, the polygraph examiner's report, and

---

[8] See Davis v. United States, 512 U.S. 452, 456-57 (1994) (clarifying that "The Sixth Amendment right to counsel attaches only at the initiation of adversarial criminal proceedings and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel.")

two statements given by appellant to police.  At the suppression hearing, she introduced testimony to the effect that she had an intelligence quotient of 86 and a sixth-grade reading comprehension level, while the readability level of a standard advice of rights form is between seventh and tenth grade and that of the agreement in stipulation of polygraph form is at a scientific, professional, or technical level.  Reiterating her ineffectiveness of pretrial counsel argument, she maintains her Sixth Amendment right to effective counsel was violated due to a conflict of interest, resulting in her cooperation in the above proceedings which led to the admission of incriminating statements in violation of her Fifth Amendment rights.

Throughout the proceedings, her counsel's advice to cooperate was clearly a matter of strategy.  Id.  Moreover, the record demonstrates that at each of the proceedings listed above, she was informed that her testimony could be used at a subsequent trial and she acknowledged she understood; it thus appears that despite appellant's relatively low reading comprehension ability, with the aid of counsel she was able to comprehend the nature of the pretrial proceedings intelligently enough to waive them freely and voluntarily.  See Thacker v. State (1985), Ind. App., 477 N.E.2d 921.

Davidson, 558 N.E.2d at 1087-88.

Because the issue of the performance of pretrial counsel is res judicata, Davidson purportedly challenges only trial counsel's performance.  However, in presenting her argument that trial counsel was doomed to inadequacy, she necessarily assumes that pretrial counsel performed in a deficient manner.  This is contrary to our Supreme Court's recognition that pretrial counsel's decisions were strategic; we will not indulge a presumption of trial counsel's ineffectiveness which necessarily rests upon a premise rejected by the higher court.

There was not a complete failure by trial counsel to act in a representative capacity. Even assuming that trial counsel's task was made more difficult by decisions of pretrial counsel, there was no abandonment of Davidson.  Davidson has not demonstrated that the

14

circumstances are such that a presumption of ineffectiveness is appropriate. Accordingly, the post-conviction court did not err in applying a Strickland analysis as opposed to presuming prejudice under the Cronic standard.

## II. Effectiveness of Appellate Counsel

Davidson contends that, although appellate counsel challenged her sentence on direct appeal, he did so inadequately. A defendant is entitled to the effective assistance of appellate counsel. Stevens v. State, 770 N.E.2d 739, 760 (Ind. 2002). The two-pronged standard for evaluating the assistance of trial counsel first enunciated in Strickland is applicable to appellate counsel ineffective assistance claims. Bieghler v. State, 690 N.E.2d 188, 192 (Ind. 1997).

There are three basic categories of alleged appellate counsel ineffectiveness: (1) denying access to an appeal, (2) waiver of issues, and (3) failure to present issues well. Id. at 193-95. Here, the third category is implicated. Claims of inadequate presentation of issues not waived are the most difficult to advance, and are almost always unsuccessful. Id. at 195. First, the claims essentially require the reviewing tribunal to re-view specific issues it has already adjudicated to determine whether new record citations, case references, or arguments would have had "any marginal effect on their previous decision." Id. Second, an Indiana appellate court is not limited in its review of issues to the facts and cases cited and the arguments made by the appellant's counsel. Id. Rather, the reviewing court will commonly review relevant portions of the record, perform separate legal research, and often decide cases based on legal arguments and reasoning not advanced by either party. Id. For these

15

reasons, an assertion of appellate ineffectiveness challenging the quality of counsel's treatment of an issue actually presented must "overcome the strongest presumption of adequate assistance." Id. at 196. The already "highly deferential" scrutiny of counsel's performance is "properly at its highest" and "relief is only appropriate when the appellate court is confident it would have ruled differently." Id.

At the time of Davidson's direct appeal, sentences were reviewed according to Indiana Appellate Rule 17(B), which provided:

(1)    The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender; and

(2)    A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed.

A claim that a sentence was manifestly unreasonable required the appellate court to reexamine the valid aggravating and mitigating circumstances. Carter v. State, 711 N.E.2d 835, 841 (Ind. 1999). Review under this rule was "very deferential" to the trial court, and the reviewing court would revise a sentence only when it was found to be "clearly, plainly and obviously unreasonable." Tobar v. State, 740 N.E.2d 109, 113 (Ind. 2000).

Davidson's sentencing challenge was addressed by the Court as follows:

Appellant argues the trial court considered improper factors in aggravation in order to enhance her two murder sentences to the maximum sixty (60) years each to be served consecutively. She maintains it was improper for the court to find as aggravating circumstances that she was "incorrigible" and had been away from home without permission, that she had given birth to two children by the age of eighteen, and that she failed to show remorse such that her steadfast denial of responsibility for the deaths resulted in perjury charges pending against her at the time of sentencing.

16

Appellant characterizes the court's use of these circumstances as constituting the improper use in aggravation of uncharged crimes and of her failure to admit guilt, which have been held to be improper reasons for enhancing [a] sentence in, respectively, Anderson v. State (1983), Ind., 448 N.E.2d 1180 and Guenther v. State (1986), Ind. App., 495 N.E.2d 788.  However, appellant fails to note the decision in Guenther subsequently was vacated by this Court, holding that lack of remorse is a proper consideration where it reveals a likelihood the crime would be repeated.  Guenther v. State (1986), Ind., 501 N.E.2d 1071.  Similarly, viewed properly in context, the trial court's mention of the circumstances here at issue was by way of concluding that to prevent recurrence of her offenses, appellant required long-term rehabilitative treatment best provided by a penal institution.  See also Stewart v. State (1988), Ind., 531 N.E.2d 1146.

Moreover, enhancement of presumptive sentences, along with imposition of consecutive sentences, may be supported by a single aggravating circumstance.  Id.; Anderson, supra.  Here, the trial court found, in addition to the circumstances mentioned above, that there were two murders, that the victims were of tender age and dependent upon their mother, the perpetrator, and that imposition of a lesser sentence would depreciate the seriousness of the crimes.  In light of all the factors enunciated by the trial court, we do not find the sentence here to be manifestly unreasonable.

Davidson, 558 N.E.2d at 1091-92.

Davidson's contentions with respect to appellate counsel's performance distill to the following:  that appellate counsel did not adequately identify the shortcomings of the trial court's sentencing statement and challenge the weighing process and the imposition of consecutive sentences.  According to Davidson, the trial court made contradictory findings as to mitigating factors, failed to find clearly supported mitigating factors of youth, lack of criminal history, self-improvement in jail, extreme emotional disturbance, and borderline intelligence, relied upon improper aggravators and "summarily" ordered consecutive sentences.  Appellant's Brief at 7.  She points out that the trial court believed her to be incorrigible and also referenced as an aggravator "imposition of a reduced sentence … will

17

depreciate the seriousness of the crimes." (Tr. 6361-62.)

The oral sentencing statement was not perfectly consistent.[9] For example, the trial court recognized that Davidson had no criminal history and no formal delinquency history but found it appropriate to "infer" that Davidson had been incorrigible because she left home without permission and had multiple teenage pregnancies. (Tr. 6361.) In Davidson's view, the trial court's recognition of "incorrigibility" transformed mitigating circumstances of youthfulness and lack of criminal record into an aggravating circumstance. She acknowledges that appellate counsel "mentioned this error in passing" but claims that he failed to present a cogent argument in this regard. Appellant's Brief at 13.

Nonetheless, Davidson's contentions present the exact situation described in Bieghler: they require revisiting issues already adjudicated to attempt to discern if additional treatment of the issues would have "any marginal effect." 690 N.E.2d at 195. Although Davidson criticizes the brevity of some sentencing arguments, she does not contend that the reviewing Court was unaware of the relevant facts or the applicable law when conducting its independent review. For example, the reviewing Court was clearly apprised that Davidson was only eighteen and nineteen years of age when she committed the murders of her children. The record included lengthy descriptions of the abuse Davidson had endured at the hands of her mother, a stepfather, and her husband. There was also an abundance of testimony that Davidson had behaved well during her incarceration, participated in visitation with her living

_____

[9] No written sentencing statement was entered into the record.

children,[10] and nurtured relationships with family friends and a pastor.

Moreover, the Court cannot be said to lack awareness of the limited purpose of the isolated aggravator, "imposition of a lesser sentence would depreciate the seriousness of the crimes." Prior to Davidson's appeal, the Supreme Court had recognized that the particular statutory aggravator "appears to be applicable only when the trial court is considering the imposition of a reduced sentence." Evans v. State, 497 N.E.2d 919, 923 (Ind. 1986). As noted in Bieghler, the reviewing Court predictably conducts research of its own precedent. 690 N.E.2d at 195. Thus, even where appellate counsel did not specifically challenge the aggravator, we can safely assume that the Court did not rely upon that factor in reviewing the sentence for manifest unreasonableness.

Davidson also faults her appellate counsel for failing to argue that the trial court did not contemporaneously identify an aggravating circumstance to support the imposition of consecutive sentences. Nonetheless, a more particularized argument would not have changed the outcome. As our supreme court observed, the record revealed multiple aggravating circumstances, including the fact that there were multiple victims, and a single aggravating circumstance would suffice to support the imposition of consecutive sentences. Davidson, 558 N.E.2d at 1092.

Given all the circumstances known to the Indiana Supreme Court regarding Davidson's offenses and her character, the Court determined that her sentence was not manifestly unreasonable. The development of a post-conviction record did not result in any

---

[10] Davidson had given birth to her fourth child during her incarceration.

supplementation of the direct appeal record that could have conceivably altered the Court's assessment of the sentence imposed.

## Conclusion

Davidson has not established that she was denied the effective assistance of trial or appellate counsel. Accordingly, the post-conviction court properly denied Davidson post-conviction relief.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.